89 P.3d 265 (2004)
121 Wash.App. 372
Debra L. HOWARD, Respondent,
v.
ROYAL SPECIALTY UNDERWRITING, INC., Intervenor/Appellant,
R.L. Alia Company, a Washington Corporation, Respondent.
No. 52160-8-I.
Court of Appeals of Washington, Division 1.
April 26, 2004.
*266 Russell Charles Love, Thorsrud Cane & Paulich, Seattle, WA, for Appellant.
Simon Henri Forgette, Kirkland, WA, James Murray Kleist, William James Leedom, Bennett Bigelow Leedom PS, Michael John Murphy, Groff & Murphy PLLC, Howard Mark Goodfriend, Catherine Wright Smith, Edwards Seih Smith & Goodfriend PS, Frank Joseph Steinmark, Abbott Davis Rothwell Mullin & Earle PC, Seattle, WA, for Respondents.
Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Amicus Curiae.
COLEMAN, J.
When an insurer refuses, in bad faith, to defend a claim brought against its insured, the insured may protect its interests by settling with the plaintiff and then seek recovery from the insurer in a bad faith action. The presumptive measure of the insured's damages in a bad faith action is the settlement amount, so long as the amount is reasonable and not the product of fraud or collusion. Besel v. Viking Ins. Co. of Wis., 146 Wash.2d 730, 49 P.3d 887 (2002). Here, an injured plaintiff entered into a settlement, which included a covenant not to execute, with the defendant, who assigned its rights *267 against its insurer to the plaintiff. The trial court determined that the settlement was reasonable. The insurer seeks reversal of the trial court's reasonableness determination, arguing that the personal injury action was not the proper forum for this determination. We affirm the finding of reasonableness because (1) the personal injury action was a proper forum for the reasonableness determination, (2) the insurer had adequate notice, (3) the insurer had a meaningful opportunity to be heard, and (4) the settlement amount was reasonable.

FACTS
In February 2001, R.L. Alia Company won a construction contract with the City of Seattle for improvements to the Lincoln Park Reservoir. XL Environmental Insurance Group insured Alia. Alia subcontracted part of the work to Northwest Cascade. Alia and Cascade entered into an indemnification agreement that required Cascade to defend and indemnify Alia for any damage attributable to Cascade. Under the agreement, Alia was an additional insured under Cascade's comprehensive general liability policy with Royal Specialty Underwriting, Inc. Work on the project began in March 2001, with Alia performing the excavating and Cascade performing the shoring work.
Debra Howard, a Cascade employee working on the project, was injured when a steel pipe weighing over 1,000 pounds fell on her. Howard suffered paralysis and brain damage. In September 2001, Howard sued Alia, alleging that Alia's negligence caused her injuries.
In December 2001, Alia filed its answer and claimed that Cascade, the City of Seattle, and Chris Wolschlag were parties at fault.[1] In January 2002, Alia moved to amend its answer to add a contractual indemnity claim against Cascade. The court granted the motion, but reserved ruling on how it would try the indemnity claim. Howard amended her complaint in June 2002 to add claims against the City of Seattle and Wolschlag.[2]
Alia tendered the defense of Howard's claim to Cascade and Royal but both refused to defend Alia. Alia's own insurance company, XL, defended Alia under its policy, with limits of $6 million. Royal defended Cascade against Alia's indemnification claim.
Alia and Howard entered into a settlement agreement for a gross amount of $20 million, with $6 million payable in cash and an assignment of Alia's claims against Cascade and Royal. Under the agreement, Alia assigned all of its interests to XL, and XL assigned a 60 percent interest to Howard. The settlement also included a covenant not to execute against Alia and XL in excess of $6 million. The settlement was contingent upon the trial court's finding of reasonableness.
On December 5, 2002, Alia moved to dismiss the indemnity claim against Cascade without prejudice. Howard also dismissed her claims against the City of Seattle. Howard and Alia then announced their intention to file a bad faith suit against Royal for its failure to defend Alia.
On December 6, 2002, Howard requested a reasonableness hearing. Under the trial court's scheduling order, the discovery cut off date was December 16, 2002. On December 27, 2002, Royal moved to intervene to contest the reasonableness of the settlement and requested the opportunity to conduct discovery. The court granted Royal's motion to intervene but did not reopen discovery. In making its ruling, the trial court stated that because Royal provided a defense for its insured Cascade, it had a full opportunity to conduct discovery through Cascade.
Howard and Alia filed a joint motion for a finding of reasonableness with a hearing on January 31, 2003. Royal moved to strike the reasonableness hearing and reset it for some time after June 1, 2003. Additionally, Royal asked the court to reconsider its order refusing to reopen discovery. The court denied Royal's motion, but reserved the issue of *268 reopening discovery until it could determine if the record was sufficient to evaluate the reasonableness of the settlement.
On January 31, 2003, the court conducted the reasonableness hearing. Royal presented, in its own words, "substantial" evidence at the hearing, questioning the reasonableness of the settlement.
In a memorandum ruling, the court found that the $20 million settlement was unreasonable but stated that a settlement of $17.4 million would be reasonable. The court specifically found that the settlement was not the product of fraud or collusion. The court also stated that a jury might find Cascade to be 20 to 40 percent at fault.
Howard and Alia entered into a new settlement agreement for $17.4 million, with the same covenant not to execute and assignment of rights. The trial court entered judgment against Alia. Royal appeals.

ANALYSIS
We first address whether the trial court erred in making the reasonableness determination in the suit between Alia and Howard instead of requiring the reasonableness determination to be made in the bad faith suit against Royal. RCW 4.22.060 provides for a reasonableness hearing after a settlement has been reached. Royal argues that because the primary purpose of RCW 4.22.060 is to protect nonsettling defendants from the settling defendants making a "sweetheart deal" with the plaintiff, it does not apply here since there were no defendants remaining in the personal injury suit. Brewer v. Fibreboard, 127 Wash.2d 512, 538, 901 P.2d 297 (1995). The Supreme Court in Besel, however, specifically approved the use of a reasonableness hearing where all parties to the original suit settled. Plaintiff Besel sustained injuries while riding in a car driven by Ralston. Ralston's insurance carrier, Viking, refused to settle with Besel. Besel and Ralston entered into a settlement with an assignment of Ralston's rights against Viking to Besel and a covenant not to execute against Ralston. The agreement was specifically contingent upon the trial court approving it as reasonable. The trial court found the agreement reasonable. Besel, as assignee of Ralston's claims, then filed suit against Viking. The Washington Supreme Court held that the trial court properly considered the Chaussee/Glover[3] factors in determining reasonableness. Here, the situation is nearly identical and, thus, under the Supreme Court's decision in Besel, the finding of reasonableness as part of the personal injury case was appropriate.
Royal argues, however, that we should distinguish Besel because there, the insurer did not dispute the reasonableness of the settlement. This distinction, however, does not affect the analysis. Regardless of whether the insurer disputes the amount of the settlement, the trial court must make an objective finding, based on the Chaussee/Glover factors, that the settlement is reasonable. Additionally, there is no suggestion in Besel that the parties' agreement on reasonableness was the Supreme Court's basis for sanctioning this approach. Because the trial court must make this objective determination, the parties' agreement or disagreement with the reasonableness of the settlement is irrelevant to the analysis.
Royal also argues that the timing of the hearing was inappropriate because the reasonableness hearing was essentially the damages phase of the bad faith action. The court in Besel held that "the amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable under the Chaussee criteria." Besel, 146 Wash.2d 730, 738, 49 P.3d 887 (2002). The fact that a reasonableness determination may have this impact is not a basis to conclude that the procedure is not appropriate, as the Supreme Court, in Besel, has already held that a reasonableness hearing in this situation is appropriate.
*269 Next, we address whether the trial court erred in denying Royal's request to reopen discovery and postpone the date of the reasonableness hearing. Royal argues that due process and fundamental fairness require permission to conduct discovery into the reasonableness of the settlement. Alia and Howard, on the other hand, argue that matters of discovery are within the trial court's discretion. We review the trial court's decision to limit discovery and to deny a motion for a continuance for an abuse of discretion. Demelash v. Ross Stores, Inc., 105 Wash.App. 508, 520, 20 P.3d 447 (2001); Public Util. Dist. 1 v. Int'l Ins. Co., 124 Wash.2d 789, 813, 881 P.2d 1020 (1994). Thus, the issue is whether the trial court abused its discretion in denying Royal's request to conduct discovery. Royal received notice of the reasonableness hearing 30 days before the hearing. Royal was not a complete "stranger to the case." Royal provided counsel for its insured Cascade, and Cascade had the opportunity to participate in discovery. Royal had access to all of Howard's medical records and copies of the correspondence between the settling parties. At the reasonableness hearing, Royal was allowed to cross-examine Howard's treating physician and was able to present substantial evidence. Under these circumstances, the trial court did not abuse its discretion in refusing to reopen discovery and continue the hearing.
Royal also argues that if the reasonableness determination was made in the bad faith action, it would have the right to conduct discovery into the issue of reasonableness, and thus, Royal should not be denied discovery here simply because Alia and Howard chose to have the reasonableness determination made in the personal injury action. The Supreme Court, however, has already held that reasonableness determinations as made here are appropriate and, under the circumstances presented, Royal had adequate notice and a meaningful opportunity to be heard. Royal will also have a full opportunity to defend itself in the bad faith action by arguing that it did not act in bad faith and is therefore not liable for any of the settlement amount. See Besel, 146 Wash.2d at 739-40, 49 P.3d 887; Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 765, 58 P.3d 276 (2002). Therefore, the trial court did not err in denying Royal's request to reopen discovery.
Finally, Royal argues that the trial court abused its discretion in finding that the $17.4 million covenant judgment between Alia and Howard was reasonable. "A trial court's finding of reasonableness is a factual determination that will not be disturbed on appeal when supported by substantial evidence." Fibreboard, 127 Wash.2d at 524, 901 P.2d 297. In determining whether a settlement is reasonable, the trial court should consider:
"the releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative fault; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."
Chaussee v. Maryland Cas. Co., 60 Wash. App. 504, 512, 803 P.2d 1339 (1991) (quoting Glover v. Tacoma Gen. Hosp., 98 Wash.2d 708, 717, 658 P.2d 1230 (1983)). "No one factor controls and the trial court has the discretion to weigh each case individually." Chaussee, 60 Wash.App. at 512, 803 P.2d 1339. Using these factors to determine whether a settlement is reasonable protects insurers from liability for excessive judgments. Besel, 146 Wash.2d at 738, 49 P.3d 887.
Here, the trial court examined the Chaussee/Glover factors and specifically found, in light of those factors, that the settlement was reasonable and not the product of fraud or collusion. In its memorandum ruling, the trial court examined each of the Chaussee/Glover factors and specifically addressed each factor in its order. The evidence submitted in support of the joint motion for a finding of reasonableness was voluminous, constituting over 800 pages. Howard and Alia presented:
*270  Declarations from attorneys Joel Cunningham and Jan Eric Peterson supporting the reasonableness of the settlement;
 Neuropsychological evaluations by Drs. Crossen and Pierce confirming Howard's brain injury and the cognitive defects which resulted from the injury;
 A report from Dr. Danielle Erb, Howard's treating physician, outlining Howard's injuries and her future medical needs;
 A report from Alia's defense witness, Dr. Donald Silverman, confirming the nature and extent of Howard's injuries and noting her need for round the clock care;
 Medical literature supporting the conclusion that the combination of spinal cord and brain injuries put Howard at risk for complicated rehabilitation;
 A life care plan by David T. Rollins, Ph.D. estimating $11,410,000 for past and future medical care costs and a wage loss evaluation estimating $1,429,220 to $1,595,464 in past and future wage loss;
 A report from economist Wolfgang W. Franz, Ph.D., reducing the damages to present cash value;
 A declaration from attorney Paul Whelan that he received a jury verdict in Clark County for $8,000,000 for a paraplegic without a brain injury;
 A letter from Alia's accountant stating that Alia is unable to pay a judgment in this case;
 A complete copy of the correspondence between counsel for Alia and Howard;
 A list of the depositions and pleadings in the suit;
 A copy of Howard's master deposition exhibit;
 A liability video tape with excerpts from depositions with Alia employees establishing liability;
 A rehabilitation video tape showing portions of Howard's rehabilitation therapy.
The evidence showed that Howard's injuries included both paralysis and brain damage and that the injuries were permanent. The trial court questioned the parties about the need for 24-hour care. Royal also had the opportunity to present evidence suggesting that Howard's injuries were not as significant as Howard claimed and that 24-hour care may not be necessary for the duration of Howard's life. Royal presented:
 A report from neurophysiologist Dr. Boll, indicating that the progression of Howard's brain injury was "completely incompatible with the natural history of all brain injuries," leading to the suggestion that some of Howard's symptoms are unrelated to the brain injury;
 A report from a physical medicine specialist, Dr. Campbell, indicating that Howard's performance decline may be attributable to other treatable conditions and not her brain injury;
 A report from an economist, Dr. Knowles, who calculated Howard's future care costs in the range of $2,631,781 to $3,395,193.
 A report from Mary Sussex, RN, providing a preliminary life care plan;
 Declarations from attorney John G. Bergmann stating that a reasonable settlement value is not above $8,000,000;
 A declaration from a Cascade employee stating that he visited Howard after the injury and that she appeared lucid and alert. He also stated that he spoke with Howard's mother who was happy with Howard's recovery and hoped that Howard would be able to drive a car again and get her own apartment;
 A declaration from Royal's attorney dealing with verdicts and settlements in Washington cases involving paraplegia and brain injury;
 A declaration from Cascade's attorney discussing discovery and the reasonableness of the settlement.
The trial court also questioned Howard's treating physician and adjusted the reasonable amount of settlement based on different life expectancy figures given during that testimony. The trial court had sufficient information before it to make the reasonableness determination. Given the extent of Howard's injuries, Alia's clear liability, Alia's financial situation, and the anticipated costs of future litigation, the trial court did not abuse its *271 discretion in determining that $17.4 million was a reasonable settlement.[4]
The final issue we address is whether the trial court erred in stating that a jury might find Cascade 20 to 40 percent at fault. As stated above, the trial court is to consider the Chaussee/Glover factors in making its determination of reasonableness. One of the factors the court is to consider is the released party's relative fault. Thus, it was appropriate for the trial court to make a finding regarding Cascade's fault.
Affirmed.
COX, C.J., and SCHINDLER, J., concur.
NOTES
[1] Chris Wolschlag is the engineer who prepared the shoring plans for the project.
[2] Howard voluntarily dismissed the claims against Wolschlag with prejudice, and he is not a party to this appeal.
[3] Chaussee v. Maryland Cas. Co., 60 Wash.App. 504, 803 P.2d 1339, 812 P.2d 487 (1991); Glover v. Tacoma Gen. Hosp., 98 Wash.2d 708, 658 P.2d 1230 (1983), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988). The factors were originally announced in Glover and subsequently quoted in Chaussee. The parties and cases refer to both the Glover and the Chaussee factors, which are the same set of factors.
[4] Additionally, Royal's own assertions support the trial court's finding. At the reasonableness hearing, Royal argued that $8 million was a reasonable settlement amount. In its motion for reconsideration, Royal again urged the court to find that $8 million was reasonable. As an alternative proposal, if the trial court was unwilling to find that $8 million was a reasonable amount, Royal urged the court to find that a reasonable settlement value would not exceed $14.8 million. Thus, Royal acknowledged that a $14.8 million settlement would be supportable. The relatively small difference between the trial court's finding of $17.4 million and Royal's alternative proposal of $14.8 million supports the trial court's finding of reasonableness.