156 P.3d 240 (2007)
MEADOW VALLEY OWNERS ASSOCIATION, a Washington Nonprofit corporation, Respondent,
Meadow Valley, L.L.C., a Washington limited liability company; Roger Hebert and Shelly Hebert, individually and their marital community; Henry Hebert and Karen Hebert, individually and their marital community; Andrez Lawski and Roma Lawski, individually and their marital community; James Kossert and Anne Kossert, individually and their marital community; and Does 7 through 50, Defendants.
Meadow Valley, L.L.C., Third-Party Plaintiff,
Hebert Construction, Inc., Third-Party Defendant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, St. Paul Guardian Insurance Company and Admiral Insurance Company, Intervenors/Appellants.
Nos. 57070-6-I, 57170-2-I.
Court of Appeals of Washington, Division 1.
April 9, 2007.
*242 A. Richard Dykstra, Kenneth F. Hobbs, Stafford Frey Cooper, Seattle, WA, for Respondent.
Daniel F. Mullin, Tracy A. Duany, Mullin Law Group PLLC, Stephanie S. Andersen, Attorney at Law, Seattle, WA, for Intervenors/Appellants.

PUBLISHED IN PART
SCHINDLER, A.C.J.
¶ 1 After finding the $2.4 million attorney fee portion of a covenant judgment settlement agreement unreasonable, the trial court stated $1.6 million would be reasonable. The parties later agreed to entry of a new stipulated judgment that included $1.6 million in attorney fees. St. Paul Fire and Marine Insurance Company and Admiral Insurance Company (collectively "St. Paul") argue the trial court's reasonableness determination was an improper adjustment of the settlement agreement amount in violation of RCW 4.22.060(3). St. Paul also argues that the trial court used the wrong standard in determining the reasonableness of the settlement. We disagree. According to RCW 4.22.060(2), if the trial court determines the settlement amount is unreasonable, the court must then set a reasonable amount. Although the court's reasonableness determination under RCW 4.22.060(2) cannot affect the validity of a settlement agreement or the amount paid, RCW 4.22.060(3) does not prevent the parties from agreeing to the amount the court determines reasonable. We also conclude the court did not use an incorrect standard in determining the reasonableness of the settlement, and affirm.

FACTS
¶ 2 The facts are undisputed. Meadow Valley, L.L.C. (MVLLC) was the developer of a 78 unit condominium project in Auburn, Washington. Hebert Construction, Inc. (HCI) was the general contractor for the project. Construction began in 1998 and by early 2000, the condominium project was complete.
¶ 3 In fall 2003, the Meadow Valley Owners Association (Association) hired an engineering firm, Pacific Engineering technologies (PET), and an architectural firm, Studio Meng Strazzara (SMS), to investigate reported water intrusion and construction defects. PET and SMS discovered numerous construction defects causing water intrusion. PET identified a number of systemic defects including installation of the window flashing, cladding, exterior sheathing, vinyl siding, and roof shingles. SMS identified a number of other defects including improperly installed subflooring and tile. In addition, an industrial hygienist discovered mold growth in the bathrooms as a result of defective tile installation.
¶ 4 In September 2003, the Association sued MVLLC[1] for breach of contract, breach of implied and express warranties under the Washington Condominium Act (WCA)[2], and violation of the Consumer Protection Act (CPA).[3] MVLLC filed a third party complaint against the general contractor, HCI, for breach of contract and indemnification. HCI, in turn, sued a number of the subcontractors.[4] St. Paul agreed to defend MVLLC and HCI under a reservation of rights.
¶ 5 The Association's experts estimated the cost to repair the defects identified by PET and SMS was approximately $4.4 million. While the experts for MVLLC and HCI confirmed many of the same defects, they disputed the cause of the water intrusion, the extent of damage, and the estimated cost of repair. In an effort to resolve the dispute, the parties agreed to select three independent contractors to provide cost estimates *243 based on an agreed scope of repair for the majority of the defects. But because the experts could not agree on the scope of repair, two different proposals were submitted to the independent contractors.
¶ 6 After receiving the cost estimates, the parties and their insurers unsuccessfully attempted to mediate first in October 2004, and again in January 2005. After the second mediation, the Association filed a motion for partial summary judgment on the alleged construction defects.[5] In March 2005, the trial court granted the Association's motion in part ruling that approximately 75 percent of the alleged defects violated the Uniform Building Code (UBC) and implied warranties of quality under the WAC.
¶ 7 In April 2005, the parties and the insurers participated in a third mediation. After the Association rejected an offer for an amount they believed was substantially less than the cost to repair the defects, the mediator recommended MVLLC and HCI enter into a settlement agreement with the Association. Without the consent of their insurers, MVLLC and HCI agreed to entry of a stipulated judgment against them for $7.2 million, comprised of $4.8 million in damages and $2.4 million in attorney fees, and agreed to assign their coverage and bad faith claims against the insurers to the Association. The Association agreed to not execute on the stipulated judgment and to dismiss the lawsuit against MVLLC and HCI. As part of the settlement agreement, the parties also agreed to file a motion asking the court to make a reasonableness determination on the settlement.
¶ 8 On May 5, the Association filed a motion to determine the reasonableness of the settlement. The court granted St. Paul's motion to intervene in the hearing.
¶ 9 At the reasonableness hearing, the Association presented evidence in support of the settlement for $4.8 million in damages and $2.4 million in attorney fees. St. Paul disputed the measure and amount of the damages. St. Paul argued the appropriate measure of damages was diminution in value. St. Paul claimed the cost of repair was $2.1 million to $3.5 million. St. Paul also challenged the attorney fees of $2.4 million and submitted expert declarations stating that a 50 percent attorney fee award was not reasonable. In addition, St. Paul claimed the rates were excessive and the billing records reflected duplicative time. The court concluded that the settlement amount of $4.8 million for the construction defect damages was reasonable but $2.4 million in attorney fees was not reasonable. Based on a lodestar analysis, the court stated that $1.6 million in attorney fees would be reasonable.
¶ 10 Three months later, MVLLC and HCI presented a new "Stipulated Judgment Against Meadow Valley L.L.C. and Herbert Construction, Inc.," for $6.4 million, comprised of $4.8 million in damages and $1.6 million in attorney fees. On September 19, the court entered findings of fact and conclusions of law on the reasonableness of the settlement and the $6.4 million stipulated judgment. St. Paul appeals.

ANALYSIS
¶ 11 St. Paul contends the trial court erred in entering the $6.4 million stipulated judgment against MVLLC and HCI. St. Paul claims that although the trial court determined $2.4 million in attorney fees was unreasonable, the court's determination that $1.6 million would be reasonable is an adjustment of the settlement contrary to RCW 4.22.060(3).
¶ 12 This court reviews issues of statutory interpretation and claimed errors of law de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). Where the relevant facts are undisputed and the parties dispute only the legal effect of those facts, the standard of review is also de novo. Hogan v. Sacred Heart, 101 Wash.App. 43, 49, 2 P.3d 968 (2000).
¶ 13 As part of the 1981 Tort Reform Act, the legislature created a right of contribution between joint tortfeasors and a procedure to *244 enforce the right and to approve settlements. RCW 4.22.060. RCW 4.22.060(1) requires a hearing on the reasonableness of a settlement with a release or covenant not to sue. Under RCW 4.22.060(1), the court must determine whether the settlement amount to be paid is reasonable.
A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.[6]
¶ 14 If the court determines the settlement amount is unreasonable under RCW 4.22.060(2), the statute requires the court to then determine a reasonable amount.
A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.[7]
¶ 15 According to RCW 4.22.060(3), the court's determination that the amount is unreasonable does not affect the validity of the settlement agreement and the court cannot adjust the amount paid under the agreement.
A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons nor shall any adjustment be made in the amount paid between the parties to the agreement.[8]
¶ 16 In Glover v. Tacoma General Hosp., 98 Wash.2d 708, 717, 658 P.2d 1230 (1983), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988), the Washington Supreme Court adopted factors the court should consider in determining the reasonableness of a settlement under RCW 4.22.060. The Glover factors include the releasing party's damages; the merits of the releasing party's liability theory; the merits of the released party's defense theory; the released party's relative fault; the risk and expense of continued litigation; the released party's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the released party's investigation and preparation; and the interests of the parties not released. Glover, 98 Wash.2d at 717, 658 P.2d 1230.
¶ 17 Where, as here, an insurer refuses to settle a claim, the insured, without the insurer's consent, can negotiate a settlement with the claimant. Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, 128 Wash.App. 317, 322, 116 P.3d 404 (2005); Chaussee v. Maryland Casualty Co., 60 Wash.App. 504, 509-10, 803 P.2d 1339 (1991). The insured's agreement to assign its coverage and bad faith claims allows the claimant to potentially obtain more than the policy limits. Red Oaks, 128 Wash.App. at 322, 116 P.3d 404.
¶ 18 In Chaussee, this court extended the application of RCW 4.22.060 and the Glover factors to determine the reasonableness of a settlement between the insured and the claimant for a stipulated judgment and covenant *245 not to execute. The Chaussee court concluded there was no logical distinction between the two settings because of the same concerns regarding the impact of the settlement on other parties and the risk of fraud or collusion. Chaussee, 60 Wash.App. at 512, 803 P.2d 1339.
¶ 19 In Besel v. Viking Ins. Co., 146 Wash.2d 730, 49 P.3d 887 (2002), the Washington Supreme Court agreed with the approach we adopted in Chaussee. The Court also held that the court's reasonableness determination establishes the presumptive measure of harm in a later bad faith action against the insurer. Besel, 146 Wash.2d at 738, 49 P.3d 887. While recognizing that "an insured's incentive to minimize the amount of a judgment will vary depending on whether the insured is personally liable for the amount," the Court concluded that "the Chaussee criteria protect insurers from excessive judgments especially where . . . the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." Besel, 146 Wash.2d at 737-739, 49 P.3d 887.
¶ 20 Here, St. Paul contends the trial court violated RCW 4.22.060(3) in determining that although $2.4 million for attorney fees was unreasonable, $1.6 million would be a reasonable amount. Specifically, St. Paul argues the court's determination of what would be reasonable is an improper adjustment of the amount the parties agreed to pay in the settlement judgment.
¶ 21 In interpreting a statute, our primary objective is to ascertain and give effect to legislative intent. Fraternal Order of Eagles, Tenino Aerie v. Grand Aerie of the Fraternal Order of Eagles, No. 564, 148 Wash.2d 224, 239, 59 P.3d 655 (2002). To determine legislative intent, we first look to the language of the statute. If the statute is unambiguous, we determine legislative intent from the plain language of the statute as written. Tenino Aerie, 148 Wash.2d at 239, 59 P.3d 655. Statutory provisions must be read in their entirety and within the context of the statutory scheme as a whole. ITT Rayonier, Inc. v. Dalman, 122 Wash.2d 801, 807, 863 P.2d 64 (1993).
¶ 22 St. Paul's argument ignores the plain language and intent of RCW 4.22.060(3) and the statutory requirement of RCW 4.22.060(2) that the court determine a reasonable amount. The plain language of RCW 4.22.060(3) states that the court's determination that the settlement amount is unreasonable "shall not affect the validity of the agreement" and the court cannot adjust "the amount paid between the parties to the agreement." The intent of RCW 4.22.060(3) is to prohibit the court from interfering with the settlement process and the parties' settlement agreement. And in determining a reasonable amount under RCW 4.22.060(2), the court does not impermissibly adjust the amount the parties agreed to pay. The purpose of a reasonableness hearing is to determine whether the settlement is reasonable under the Glover/Chaussee factors. If the court determines the settlement is unreasonable, RCW 4.22.060(2) requires the court to set a reasonable amount. In doing so, the court does not adjust the amount paid according to the agreement.[9] RCW 4.22.060 does not prevent the parties from then independently agreeing to a different amount.
¶ 23 In finding that the $2.4 million attorney fee amount was unreasonable but $1.6 million would be reasonable, the court also followed the procedure approved in Howard v. Royal Spec. Underwriting, 121 Wash.App. 372, 89 P.3d 265 (2004). In Howard, the plaintiff and the insured entered into an agreement for a $20 million stipulated judgment against the insured with a covenant not to execute on the judgment. Howard, 121 Wash.App. at 376, 89 P.3d 265. The settlement agreement was contingent on the court's reasonableness determination. After a reasonableness hearing, the court ruled that $20 million was unreasonable, but that a settlement of $17.4 million would be reasonable. The plaintiff and the insured then entered into a new agreement with a stipulated *246 judgment of $17.4 million. Id. at 377, 89 P.3d 265. On appeal, we affirmed the trial court and rejected the insurer's argument that the court abused its discretion in finding $17.4 million was reasonable and entering judgment for that amount.
¶ 24 St. Paul claims Howard is distinguishable because the settlement agreement in that case was contingent on the court's reasonableness determination. St. Paul also claims Howard is distinguishable because the parties entered into a new settlement agreement. St. Paul's attempt to distinguish Howard is unpersuasive.
¶ 25 Here, while the parties did not use the word "contingent," the settlement agreement expressly addresses scheduling a hearing to determine the reasonableness of the settlement. The settlement agreement provides:
Reasonableness Hearing. On or before May 6, 2005, the parties shall jointly file a Motion requesting a ruling of the Court that this settlement among the Settling Parties is reasonable pursuant to RCW 4.22.060, and Clausee [sic] [Chaussee] v. Maryland, 60 Wash.App. 504, 803 P.2d 1339 (1991).
¶ 26 As agreed, in May 2005, the Association filed a motion to schedule a reasonableness hearing. The hearing was held in June. At the conclusion of the hearing, the trial court ruled that $4.8 million in damages was reasonable but $2.4 million in attorney fees was unreasonable. After taking into consideration St. Paul's objections to the $2.4 million amount for attorney fees, the court stated that attorney fees of $1.6 million would be reasonable. In September 2005, the Association presented a new stipulated judgment against MVLLC and HCI for $6.4 million, which included $4.8 million in damages and $1.6 million in attorney fees. On September 19, the court entered the $6.4 million stipulated judgment.
¶ 27 Because the trial court ruled that the $2.4 million in attorney fees was unreasonable, St. Paul also argues that this court's decision in Werlinger v. Warner, 126 Wash. App. 342, 352, 109 P.3d 22 (2005), requires the Association to establish damages in a later bad faith action "in the ordinary way." We disagree.
¶ 28 In Werlinger, the insured, Warner, filed for bankruptcy before the automobile accident that killed Werlinger. Warner's insurance policy had a $25,000 limit. Following his discharge from bankruptcy, Warner agreed to entry of a stipulated judgment for $5 million in exchange for the Estate's agreement to release him from personal liability. Werlinger, 126 Wash.App. at 345-346, 109 P.3d 22. On appeal, this court upheld the trial court's determination that the settlement was unreasonable because Warner's discharge in bankruptcy limited his liability to $25,000. Id. at 351-352, 109 P.3d 22. Unlike here, the insured's bankruptcy insulated him from any harm resulting from the insurer's bad faith.
¶ 29 We conclude that after the court determines a settlement amount is unreasonable, neither RCW 4.22.060 nor caselaw precludes the parties from then agreeing to entry of a new stipulated judgment in the amount the court determined would be reasonable.
¶ 30 The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See, RCW 2.06.040; CAR 14.
WE CONCUR: APPELWICK, C.J., and AGID J.
NOTES
[1] The Association also sued Roger Hebert, as the managing partner of MVLLC, and four other members of MVLLC for violation of the Uniform Fraudulent Transfer Act under Chapter 19.40 RCW and violations under the Limited Liability Companies Act, chapter 25.15 RCW.
[2] Chapter 64.34 RCW.
[3] Chapter 19.86 RCW.
[4] The court dismissed most of the fourth party complaints against the subcontractors as barred by the statute of limitations. The court also dismissed Roger Hebert because he had no personal liability under the WCA.
[5] After the second mediation, St. Paul also filed a declaratory judgment on coverage in federal district court.
[6] RCW 4.22.060(1).
[7] RCW 4.22.060(2).
[8] RCW 4.22.060(3).
[9] Despite St. Paul's policy arguments that RCW 4.22.060(2) should not apply to a covenant judgment the appellate courts have approved of the application of RCW 4.22.060 in this context. Chaussee, 60 Wash.App. at 511-512, 803 P.2d 1339; Besel, 146 Wash.2d at 738-739, 49 P.3d 887; and Howard, 121 Wash.App., at 377-378, 89 P.3d 265.