FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG 13 AM 9: 46

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRIAN SYKES and NICOLE SYKES, husband and wife; and BRIAN SYKES and NICOLE SYKES, as guardians of RILEY SYKES, JAYDEN SYKES and MIA SYKES, minors, | ) ) ) ) ) ) | No. 76009-2-I DIVISION ONE |
| Respondents, | ) ) ) | |
| v. | ) ) ) | |
| JOGINDER SINGH, d/b/a AP TRANSPORT, a Washington company, and JANE DOE SINGH, husband and wife; and | ) ) ) ) ) | UNPUBLISHED OPINION FILED: August 13, 2018 |
| Respondents, | ) ) ) | |
| RICHARD H. NOBLE, JR. and SUSAN NOBLE, husband and wife; and GILLIARDI LOGGING AND CONSTRUCTION, INC., a Washington corporation; and MICHAEL M. MULLINS and JANE DOE MULLINS, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Appellant. | ) ) | |

BECKER, J. — A liability insurer refused to defend its insured, leading to a bad faith lawsuit. The measure of damages in the bad faith lawsuit was the

amount of a settlement in the underlying lawsuit. In this appeal, the insurer challenges a trial court determination that the settlement was reasonable.[1] We affirm.

## FACTS

Respondent Brian Sykes was injured in a 16-vehicle traffic accident on July 20, 2011. According to the accident report by the Washington State Patrol, westbound traffic in the right lane of I-90 was jammed up by vehicles that had slowed to merge onto northbound I-405. A semitruck, owned by Joginder Singh and driven by his employee, approached too fast from behind. The Singh truck swerved into the adjacent lane, where it collided with a logging truck owned by Gilliardi Logging and Construction Inc. The logging truck careened into a sedan occupied by nine-year-old Nancy Beckwith, who died three days later from severe injuries sustained in the crash. The momentum of the Singh truck carried it forward into several other vehicles, one of which was pushed into the truck Sykes was driving. The Sykes truck sideswiped several other cars as it rolled onto the driver's side and eventually skidded to a stop.

Beckwith's estate brought a wrongful death suit against Singh and Gilliardi. In March 2013, the suit was settled. The settlement with Singh was for the policy limits of $1 million contributed by Singh's insurer, appellant Zurich American Insurance Company. The settlement with Gilliardi was for the policy limits of $2 million contributed by Gilliardi's insurer, except that $100,000 was

---

[1] This appeal is linked with cause number 76479-9-I, in which the insurer appeals from the judgment on the jury verdict in the bad faith lawsuit.

held in reserve to pay any future claims that might arise from Gilliardi's role in the accident.

Not long after the accident, Sykes notified Singh that he had a claim for his injuries. Sykes filed suit against Singh on July 16, 2014, shortly before the statute of limitations expired. Sykes did not timely sue Gilliardi. Thus, he lost the opportunity to make a claim against Gilliardi's $100,000 reserve.

Sykes sought damages for injuries he sustained in the accident and loss of consortium damages for his wife and two children. Because Singh's policy limits were exhausted, Zurich refused to defend him. Singh retained counsel and answered the Sykes complaint on September 17, 2014. On October 6, 2015, Singh brought a bad faith claim against Zurich for refusing to defend him.

The trial of Sykes against Singh was set for June 6, 2016. On January 4, 2016, the parties agreed to binding arbitration. The arbitration was set for May 20, 2016. On May 1, 2016, Singh's attorney contacted Sykes to suggest settlement by means of a covenant judgment:

> My client is concerned about the danger and costs associated with the arbitration hearing. What are your thoughts on a covenant judgment and stipulation not to execute? You would agree to only collect from the proceeds of my client's bad faith claim against Zurich. Thoughts?

Sykes responded with an itemized list of $304,262.10 in damages. He offered to settle for $250,000.00. Singh agreed, and the parties entered a stipulated judgment in that amount, with a covenant that Sykes would not execute against Singh personally except for $10,000.00. Recovery of the remaining $240,000.00 would be limited to the proceeds, if any, of Singh's bad faith claim.

3

"When a defendant whose liability insurer has acted in bad faith proceeds to make his own settlement with an injured plaintiff, the amount of that settlement may become the presumptive measure of damage in the bad faith lawsuit, but only if a trial court determines that the settlement is reasonable." Werlinger v. Warner, 126 Wn. App. 342, 344, 109 P.3d 22, review denied, 155 Wn.2d 1025 (2005). Because of the possibility that an insured "may settle for an inflated amount to escape exposure," Washington courts have long recognized the need for a mechanism to prevent collusion in settlements containing covenants not to execute. Chaussee v. Maryland Cas. Co., 60 Wn. App. 504, 510-11, 803 P.2d 1339, 812 P.2d 487, review denied, 117 Wn.2d 1018 (1991). A reasonableness hearing under RCW 4.22.060 is that mechanism. To determine whether such a settlement is reasonable, the trial court is guided by the nine factors first articulated in Glover for Cobb v. Tacoma General Hospital, 98 Wn.2d 708, 717-18, 658 P.2d 1230 (1983), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 756 P.2d 717 (1988):

> "The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

Singh and Sykes filed a joint motion for determination of reasonableness. Zurich intervened and opposed the motion. The hearing was held on September 16 and 23, 2016. Sykes and his wife testified and were cross-examined by Zurich. Sykes presented his medical bills, declarations from his medical

providers, and declarations from friends and family. The parties addressed the Glover factors in oral argument. The trial court gave an oral ruling concluding the settlement was reasonable. Singh proposed a written order with factual findings regarding each of the nine Glover factors. On October 5, 2016, Zurich filed objections to the proposed order and suggested modifications to the findings. The court entered the proposed order finding the settlement reasonable, with modifications responsive to some of Zurich's objections. The settlement was then used as the measure of damages in Singh's bad faith suit against Zurich.

Zurich appeals from the trial court's determination that the settlement was reasonable.

## LEVEL OF SCRUTINY

The settling parties bear the burden of establishing reasonableness. Water's Edge Homeowners Ass'n v. Water's Edge Assocs., 152 Wn. App. 572, 594, 216 P.3d 1110 (2009), review denied, 168 Wn.2d 1019 (2010). A determination of reasonableness is reviewed for abuse of discretion. "The trial judge faced with this task must have discretion to weigh each case individually." Glover, 98 Wn.2d at 718. The inquiry necessarily involves factual determinations which will not be disturbed on appeal when supported by substantial evidence. Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 774-75, 287 P.3d 551 (2012). No single factor controls, and all nine are not necessarily relevant in all cases. Besel v. Viking Ins. Co of Wis., 146 Wn.2d 730, 739 n.2, 49 P.3d 887 (2002).

5

Zurich contends the appellate courts have allowed the conduct of reasonableness hearings to become "very loose."[2] Zurich argues that if the trial court had scrutinized the evidence more carefully, the court would have necessarily concluded that $250,000 was an excessive and collusive settlement.

The Supreme Court views the process of considering the Glover factors as sufficient to protect insurers from collusive settlements and excessive judgments if the insurer has notice of the reasonableness hearing and has an opportunity to argue that the settlement is not reasonable. Besel, 146 Wn.2d at 739.

Zurich was notified of the reasonableness hearing. The notice could not have come as a surprise. By virtue of having denied Singh's tender of defense two years before the hearing and having been sued for bad faith, Zurich could anticipate the possibility that its insured, Singh, would enter into a covenant judgment settlement that would require a reasonableness hearing.

Zurich had ample opportunity to argue that the settlement was unreasonable. As an intervening party, Zurich was empowered to subpoena witnesses. As Singh's insurer, Zurich had access to documents used by counsel for Singh in responding to the Beckwith claim. Thus, Zurich "was not a complete 'stranger to the case.'" Howard v. Royal Specialty Underwriting, Inc., 121 Wn. App. 372, 379, 89 P.3d 265 (2004), review denied, 153 Wn.2d 1009 (2005). The trial court scheduled a second day of the hearing a week after the first day for the specific purpose of ensuring that Zurich had ample time to respond in writing to

---

[2] Brief of Appellant at 25.

late-filed declarations and to recall witnesses if desired. Zurich was allowed additional time to present its written objections to Singh's proposed findings.

By thoroughly considering the Glover factors (also referred to as Chaussee or Besel factors), the trial court applied the degree of scrutiny called for by Besel. We find nothing amiss in the process.

## FACTUAL DETERMINATIONS

The settlement allocated $220,000 to Sykes and $30,000 to his wife and children for loss of consortium. Zurich contends that in evaluating Sykes' claim against Singh, the court should have realized that Sykes had relatively minor injuries, little wage loss, and "no reasonable expectation of recovering anything close to $250,000." According to Zurich, the trial court made factual determinations concerning the Glover factors that are not supported by substantial evidence.

"Washington courts have found a trial court's reasonableness determination to be valid even when the trial court fails to list any of the Chaussee factors and instead simply mentions that the parties addressed the factors in their briefs and the trial court considered the briefs." Water's Edge, 152 Wn. App. at 585. Here, though, the trial court made findings pertaining to each of the factors. We have used these findings to structure our review.

Releasing Person's Damages

The trial court found that the plaintiffs' damages "are significant as a result of this serious accident." The court found that Sykes had suffered numerous injuries, including but not limited to posttraumatic stress disorder, ongoing

depression, chronic whiplash syndrome, headaches, bulging cervical discs, strains, and sprains. "Moreover, the property damage photographs speak for themselves. Mr. Sykes makes a very credible witness and the court notes that he has presented evidence of damages related to the accident and the fact his children were around the same age as a girl who perished in this accident."

The settlement identified special damages of $67,915, the amount Sykes obtained in worker's compensation from the Department of Labor & Industries. That amount included $12,500 for the amount of Sykes' loss of earning power as stipulated by his employer, and it also included reimbursement for Sykes' medical bills. The medical bills submitted to the trial court totaled just under $48,000. The medical bills were accompanied by declarations from medical providers stating that the treatments were necessitated by the accident.

Zurich claims the medical expense claims were inflated. Zurich asserts the trial court should have placed more weight on the report of an independent medical examiner and other evidence indicating the only physical injuries Sykes suffered as a result of the accident were a minor whiplash, superficial lacerations, and a dorsolumbar strain that quickly resolved. Zurich contends a reasonable settlement would have valued the medical expenses at about $14,000, including about $2,500 for psychological treatment.

When addressing the competing medical evidence, the trial court stated that the court was "familiar with" the independent examiner and noted that the examiner "typically testifies on behalf of defendants in personal injury cases." The court stated, "Considering this in light of plaintiffs' treating health care

providers' proof, the court finds there would have been a question of fact pertaining to the special damages incurred but that plaintiffs' arguments would be more persuasive than defendants' arguments." Zurich's objection to this finding was that a jury would not be "familiar" with the witness and "because a witness typically testifies for one side or the other does not mean his or her testimony is not credible."

The trial court's assessment that the independent examiner's report would not carry the day with a neutral fact finder, while perhaps overly dismissive in tone, does not demonstrate bias or arbitrariness as Zurich contends. The court was looking at a fault-free plaintiff who had been through a terrifying experience and had suffered measurable physical injury as a result. A trial court, because of its experience with damage awards, is capable of making an informed judgment about the weight a particular professional witness can add to the evidence. Sykes was prepared to prove to an arbitrator that his medical expenses were necessary and that his psychological damage was ongoing. The Department of Labor and Industries considered his medical documentation sufficient to support the award of worker's compensation. The trial court did not abuse its discretion by rejecting Zurich's argument that medical expenses were inflated.

Zurich's objections assume that evidence produced at a reasonableness hearing must be ignored if it is not presented in a form that would be admissible at a trial. For example, to support its position that the medical special damages were only $14,000, Zurich argued that many of the injuries itemized by Sykes in his testimony "are not supported by any medical testimony, particularly as to their

duration and whether they are related to the accident on a more probable than not basis. Many are duplicative. The source of these various diagnoses in the record is uncertain, if it exists at all, and the court did not identify these in its oral ruling." This objection is part of Zurich's overarching complaint that the current process for determining the reasonableness of a settlement unfairly disregards the interests of insurers. Zurich argues that until Washington "eliminates these presumptions that relieve policyholders from the usual tort burdens of proving harm and damages, while simultaneously eliminating insurers' access to juries on these elements enjoyed by all other tort defendants, then it is incumbent on courts at all levels to put the adverse parties to their proof. Trial courts should not give the benefit of the doubt to a settlement presented for approval under RCW 4.22.060."[3]

A potential problem with the admissibility or sufficiency of evidence is certainly something a trial court can consider at a reasonableness hearing. But Zurich cites no authority indicating that the trial court must rely only on evidence formally admissible at a trial. The procedures for handling evidence at these hearings is within the court's discretion and may include less traditional evidence. Pickett v. Stephens-Nelsen, Inc., 43 Wn. App. 326, 334-35, 717 P.2d 277 (1986). The information Sykes presented was of a type often presented in settlement negotiations. The law does not require settling parties to prepare for a reasonableness hearing as exhaustively and expensively as if they were preparing for trial.

---

[3] Brief of Appellant at 4.

Zurich contends the trial court should have found that Sykes could have mitigated his pain and suffering if he had followed prescribed treatment. There was evidence that Sykes did not take muscle relaxers for back pain or undergo recommended psychological treatment. There was no evidence, however, that Sykes' damages would have been reduced by any significant amount if he had followed these recommendations. The trial court did not abuse its discretion by failing to discount the settlement on this basis.

Zurich also challenges the general damages. The settlement allocated approximately $150,000 in general damages for Sykes and $30,000 for the loss of consortium by his family members. Sykes attributed his general damages to pain and suffering and the emotional trauma of the accident. Zurich objects to the absence of expert testimony but fails to show that expert testimony is needed to support an award of general damages. Support for the general damages was provided by Sykes' own testimony along with declarations from friends and family that after the accident, Sykes became depressed and withdrawn. Zurich argues that the allocation to the Sykes children for loss of consortium was error in view of Sykes' testimony that he spent more time with them and had greater appreciation for them as the result of the accident. But in view of the evidence that Sykes suffered from ongoing depression, it was reasonable to include loss of consortium damages in the settlement.

Zurich contends Sykes inflated the amount of his lost wages and the trial court erred by finding his wage loss was $61,526.02. Zurich misreads the court's order. The findings state only that Sykes "alleged" a wage loss in that amount.

11

The record reflects that the trial court used the workers' compensation award as the yardstick for special damages. That award was for a total of $67,915.00 including medical bills as well as wage loss.

We conclude there was substantial evidence to support the factual determinations underlying the trial court's assessment that the damages awarded by the settlement were reasonable.

Merits of the Releasing Person's Liability Theory

It is undisputed that Sykes had a solid theory of liability. The trial court found that Singh had admitted liability for the collision and was vicariously liable for the negligence of his driver. Zurich assigns error to this finding only to the extent that the primary evidence of Singh's liability was the Washington State Patrol report. Zurich argues that because the report itself is hearsay and inadmissible at a trial, there was a substantial risk that Sykes would not have a liability expert at trial.

The parties were scheduled to go to arbitration, not trial. Zurich does not show that the report would have been inadmissible in an arbitration. And in any event, it is not unreasonable to assume that, if necessary, Sykes would have been able to obtain and present the evidence in a form that would overcome technical objections.

Merits of the Released Person's Defense Theory

and

Released Person's Relative Fault

The released person is Singh. Although Singh admitted liability, a potential defense theory was to set up Gilliardi as an empty chair. Sykes did not timely sue Gilliardi. If Singh could convince the fact finder to apportion fault to Gilliardi, Singh would be liable for only his own percentage of damages. Singh retained an expert in an attempt to point the finger at Gilliardi Logging as a nonparty at fault. There was evidence that Gilliardi's driver had a short window of time in which he might have avoided being hit by Singh's swerving truck.

Zurich contends the trial court should have reduced the settlement to reflect Gilliardi's relative fault. The trial court conceded in its oral ruling that Zurich "does have a point in the release or the nonsuing or suing too late the other insurance company." But the court found that the argument for assigning fault to the driver of the Gilliardi logging truck was "not particularly strong" in view of the report of the Washington State Patrol, which assigned 100 percent of fault to Singh's employee. This was not an untenable position. The neutral report of the State Patrol would likely carry more weight with a fact finder than the expert opinions obtained by interested parties, especially since those opinions did not specify a percentage of fault attributable to Gilliardi.

Risks and Expenses of Continued Litigation

and

Released Person's Ability To Pay

The trial court found that the risks and expenses of continued litigation would have been significant for Singh, who had to pay his attorney because he was not provided with defense counsel by Zurich. The parties would have had to pay the costs of arbitration. The court found that a judgment for Sykes could have resulted in bankruptcy and financial ruin for Singh. Zurich does not contest these findings on appeal.

Any Evidence of Bad Faith, Collusion, or Fraud

The trial court found no evidence of bad faith, collusion, or fraud: "The evidence presented suggested the parties engaged in arm's length negotiations and settled approximately one week prior to the scheduled arbitration hearing."

Zurich contends Sykes and Singh had the burden to show that the settlement was *not* procured through bad faith, fraud, or collusion. This is a misreading of Water's Edge and Besel. At the reasonableness hearing, the proponents of the settlement have the burden to prove the settlement is reasonable. In making this determination, the trial court considers whether there is *any evidence* of bad faith, collusion, or fraud as but one of the nine factors. Water's Edge, 152 Wn. App. at 594-95. If the court determines the settlement is reasonable, the burden shifts to the insurer to prove the settlement was *in fact* the product of fraud or collusion. Besel, 146 Wn.2d at 739.

Here, we are at the stage where the question is whether the trial court abused its discretion in finding the settlement to be reasonable. Water's Edge, 152 Wn. App. at 595. In Water's Edge, the trial court found a stipulated settlement for $8.75 million unreasonable largely because of a troubling history of negotiations between the attorneys for the insured defendants and the attorneys for the plaintiffs. The trial court credited an estimate by an attorney familiar with the case that the reasonable value of the case was closer to $500,000 in a worst case scenario. Water's Edge, 152 Wn. App. at 589. Nothing similar is shown by the record in this case.

As evidence of collusion, Zurich argues that Singh was motivated to agree to the covenant judgment because it protected him from the adverse effects a "real" judgment in favor of Sykes would have had.[4] According to Zurich, in view of Singh's lack of assets, the only viable reason for Sykes to sue Singh was to make a settlement that would allow Sykes to share in the proceeds, if any, of Singh's bad faith suit against Zurich. In that suit, Zurich argues, Singh would essentially be representing the interests of Sykes as well as his own interests.

What Zurich describes are generic characteristics of a covenant judgment stipulated to by a liable defendant whose insurer has breached its duty to defend or has otherwise acted in bad faith. It is well established that such settlements are permissible under Washington law. See generally Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 823 P.2d 499 (1992). At oral argument before this court, we asked counsel for Zurich if she saw this case as a vehicle to take to the

---

[4] Brief of Appellant at 45.

15

Supreme Court, so that the court could be asked to tighten up the standards for reasonableness hearings and take another look at cases like Butler and Besel. Counsel responded, "Yes I am. I'll be frank about it."[5]

It must be remembered that Singh was paying defense costs out of his own pocket and was facing personal liability well in excess of $250,000 if the case proceeded to arbitration. If an insured is offered a settlement that effectively relieves him of any personal liability, at a time when his insurance coverage is in doubt, the insurer who is disputing coverage cannot compel the insured to forego a settlement which is in his best interests. Butler, 118 Wn.2d at 397. The settlement did not prevent Zurich from defending itself in the bad faith action. If the jury found Zurich did not act in bad faith, Zurich would not be liable for any of the settlement amount. Howard, 121 Wn. App. at 380. If Singh were unable to prove that Zurich's refusal to defend him was wrongful, Singh's settlement with Sykes would not affect Zurich.

On this record, the trial court did not abuse its discretion by finding there was no evidence of bad faith, collusion, or fraud.

Extent of the Releasing Person's Investigation and Preparation of the Case

The trial court found that with the exception of Sykes' failure to timely sue Gilliardi, "counsel for both parties had prepared this case thoroughly and were prepared for binding arbitration." Zurich claims this finding is unsupported by

---

[5] Wash. Court of Appeals oral argument, Zurich Am. Ins. Co. v. Sykes, 76009-2-I (June 12, 2018), at 7 min., 36 sec. through 7 min., 38 sec. (on file with court).

substantial evidence. We disagree. Singh's liability could not realistically be denied. Evidence of Gilliardi's liability was available. Preparation for arbitration primarily required attention to evidence of damages. Sykes compiled his medical bills and obtained declarations from his medical providers as well as from friends and family. Singh deposed Sykes and required him to submit to an independent medical examination that controverted Sykes' evidence. Sykes and his wife were prepared as witnesses and gave testimony that the trial court found to be compelling. The trial court had a tenable basis to find that both parties were prepared.

Zurich faults Singh and Sykes for failing to offer evidence comparable in quality to the evidence that supported the reasonableness determination in Howard, 121 Wn. App. at 381. In that case, the settlement was $17.4 million. Howard, 121 Wn. App. at 377. The settling parties presented a neurological evaluation, several expert reports, a life care plan, medical literature, videos of the victim's rehabilitation therapy, and a number of depositions. The fact that the parties in Howard presented more abundant evidence does not mean that Singh and Sykes were unprepared for arbitration of a case that settled for $250,000.

Interests of the Parties Not Being Released

The court found that other interested parties, Zurich and the Department of Labor and Industries, were provided with notice of the hearing and that Zurich fully participated.

Zurich denies that it had a full opportunity to participate at the hearing. Zurich particularly objects to the court's acceptance of declarations from Sykes'

medical providers that were submitted, over Zurich's objection, the day before the reasonableness hearing began. But because the court continued the hearing to the next week to allow Zurich time to respond to these declarations in writing, Zurich fails to show that it was prejudiced. Zurich argues that a reasonableness hearing is inadequate to protect an insurer from an inflated judgment because it is not a jury trial conducted according to court rules. As previously discussed, the law is to the contrary.

As the court noted, counsel for Zurich took a deposition of Sykes' attorney to explore the possibility of collusion, cross-examined Sykes and his wife at the hearing, and submitted pleadings that the court took into consideration. We conclude the court gave appropriate consideration to Zurich's interests.

CONCLUSION

The determination of reasonableness by a trial court is an exercise of discretion guided by the Glover factors. No single factor controls. We have reviewed the court's factual determinations and conclude they are supported by substantial evidence. We find no abuse of discretion in the court's finding that the settlement of $250,000 was reasonable.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, J

Appelwick, C.J.

18