[No. 25540–1–I.   Division One.   February 4, 1991.]

DEAN CHAUSSEE, ET AL, *Plaintiffs*, WILLIAM R. NODELL, ET AL, *Appellants*, v. MARYLAND CASUALTY COMPANY, ET AL, *Respondents*.

*J. Murray Kleist* and *Schroeter, Goldmark & Bender; Charles K. Wiggins* and *Edwards & Barbieri,* for appellants.

*Thomas D. Frey, A. Richard Dykstra,* and *Stafford Frey Cooper & Stewart; Rudy A. Englund* and *Lane Powell Spears Lubersky; William A. Helsell* and *Helsell, Fetterman, Martin, Todd & Hokanson; Michael J. Bond* and *Lee, Smart, Cook, Martin & Patterson,* for respondents.

GROSSE, C.J.—William R. Nodell and Shirley E. Nodell (the Nodells), as guardians of Scott Nodell and as assignees of coplaintiffs Dean Chaussee, Carol Chaussee, and Bellewood Corporation (hereinafter collectively referred to as Chaussee), appeal a judgment notwithstanding the verdict (judgment n.o.v.) resulting in the dismissal of their claims for failure to settle an insurance claim within policy limits and for bad faith. The claims are against the respondents Maryland Casualty Company (Maryland), Chaussee's insurer; Reed, McClure, Moceri & Thonn, P.S. (Reed McClure), the law firm Maryland retained to represent Chaussee; and McDonald & McGarry Company (McDonald), Chaussee's insurance agent and broker. Maryland cross–appeals arguing that the trial court erred in denying its motion for a directed verdict because the Nodells did not prove coverage. We affirm the judgment n.o.v., and thus do not reach the issue raised by Maryland's cross appeal.[1]

In 1979, the Nodells' son Scott was severely injured when his car hit a pole after sliding on an icy road near a condominium construction site. As a result of the accident, Scott is a quadriplegic. In an underlying personal injury action, the Nodells sued Chaussee and King County for negligence in allowing ice to form and remain on a county highway.

Maryland retained Reed McClure to defend Chaussee under a reservation of rights. In March of 1982, Chaussee received interrogatories that requested the amount of the policy's insurance limits. Chaussee answered the interrogatories but left the policy limits question unanswered. A paralegal at Reed McClure contacted Maryland who refused to disclose the policy limits. When Chaussee was again contacted, he suggested the paralegal contact McDonald. The paralegal did so and was told that the policy limits were $500,000 with umbrella coverage of $2 million. In fact, the umbrella coverage was not in effect when

---

[1] Although both Reed McClure and McDonald raise additional errors in their briefs, they will not be considered because neither party has filed a notice of appeal.

the accident occurred and the policy limits were actually $500,000. Sometime prior to February 1983, several Maryland employees noted the mistake but did not correct the interrogatory answer.

Before the Nodells learned of the mistake, they negotiated a settlement with King County for $1.15 million and demanded the policy limits of $2.5 million from Chaussee. Maryland and Reed McClure then informed the Nodells of the correct policy limits and Maryland agreed to pay $500,000 if the Nodells released Chaussee. The Nodells refused and again demanded that Maryland pay the erroneous policy limits of $2.5 million. When Maryland refused, Chaussee through his private attorney settled with the Nodells. In exchange for a stipulated judgment of $7.5 million with a covenant not to execute, Chaussee assigned his claims against Maryland, Reed McClure, and McDonald to the Nodells. After a hearing on June 28, 1984, a stipulated judgment for $7.5 million was entered against Chaussee. Maryland paid the Nodells the policy limits of $500,000.

The Nodells, as assignees of Chaussee, commenced an action against Maryland asserting claims for negligence, bad faith, misrepresentation, estoppel, fraud, violations of the Consumer Protection Act, breach of implied and express contracts, outrage, and negligent infliction of emotional distress.[2] Maryland filed a third party complaint for indemnity against McDonald and Reed McClure. The Nodells then amended their complaint and added McDonald and Reed McClure as additional defendants.

---

[2]Most of the claims were dismissed at summary judgment except those for negligence and bad faith. The Nodells claimed that Maryland acted in bad faith for failing to settle within policy limits and breached its duties under *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986). *Tank* applies to a defense under a reservation of rights and requires the insurer to (1) thoroughly investigate the claim, (2) retain competent defense counsel, (3) inform the insured of the reservation of rights defense and any developments relevant to policy coverage and progress of the suit, and (4) refrain from actions that demonstrate a greater concern for the insurer's interest than the insured's risk. *Tank*, 105 Wn.2d at 388.

During a 5-week trial witnesses for Maryland and Reed McClure testified regarding their responsibilities and the underlying lawsuit. The Nodells did not present expert testimony on the breach of duty claims or on the reasonableness of the settlement. Neither the consent judgment nor the insurance policy was admitted into evidence. A letter was admitted into evidence which was written by Mr. Wohlford, an attorney with Reed McClure, to the Nodells' attorney stating he had always believed the policy limits were $500,000. When Wohlford testified, however, he denied he knew the interrogatory was incorrect. After the Nodells presented their case, each of the respondents moved for a directed verdict. The trial court denied the motions.

The respondents presented a limited defense. They presented a short section from Dean Chaussee's deposition regarding his knowledge of the policy limits; questioned Chaussee's personal attorney; and then rested. The jury returned a special verdict for the Nodells finding that Chaussee was forced into the settlement with the Nodells as a proximate result of the negligence of the respondents. The trial court granted the respondents' motion for a judgment n.o.v. and dismissed all of the Nodells' claims.

### STANDARD OF REVIEW

■■ The issue on appeal is whether the trial court properly granted the judgment n.o.v. The Supreme Court has defined the standard for a judgment n.o.v.:

> A motion for a judgment n.o.v. should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. All evidence must be viewed in the light most favorable to the party against whom the motion is made. There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—i.e., evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation.

(Citations omitted.) *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 817–18, 733 P.2d 969 (1987) (quoting *Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980)). The trial court granted the judgment n.o.v. because the Nodells did not introduce sufficient evidence to prove damages, that is, the reasonable settlement value of the underlying claim. The trial court reasoned:

> I do not believe there was one word of evidence, direct or circumstantial, regarding the reasonable settlement value of the claim 18 months or so in advance of a possible trial. . . .
>
> . . . .
> . . . [P]laintiffs saw fit to proceed without any witnesses on this issue and just relied on circumstantial evidence to the extent it could, plus what adverse experts said about the value of the case for purposes of trial, but I really don't think those are interchangeable . . ..

The Nodells present two arguments that sufficient evidence supports the judgment. First, they argue that the judicially approved consent judgment for $7.5 million was presumptively reasonable unless the respondents show unreasonableness, bad faith, or collusion. Second, they assert that damages were established because the evidence at trial showed that liability was likely on the underlying claim, and that the consent judgment was within the range of a probable damage award. We agree with the trial court that the Nodells failed to present sufficient evidence on damages to sustain the verdict and affirm the judgment n.o.v.

### WHAT CONSTITUTES A REASONABLE SETTLEMENT

The first issue we address is what constitutes a reasonable settlement. Washington case law provides limited guidance in determining whether a consent judgment with a covenant not to execute presents sufficient evidence of a reasonable settlement. The case of *Hamilton v. State Farm Ins. Co.,* 83 Wn.2d 787, 523 P.2d 193 (1974) established that an insurer is liable when it fails to settle a claim within the policy limits if that failure is attributable to either bad faith or negligence. When an insurer refuses to settle a claim, the insured may negotiate a settlement on its own

and then seek reimbursement from the insurer. *Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952). However, the insurer is liable only for the amount of the settlement that is reasonable and paid in good faith. *Evans*, 40 Wn.2d at 628. Because the parties in *Evans* stipulated that the settlement was reasonable the court did not address the issue directly. No Washington court has defined what constitutes a reasonable settlement in the context of a bad faith failure to settle claim.[3]

█ The Nodells urge this court to agree that unless the respondents can show unreasonableness, bad faith or collusion, the consent judgment is presumptively reasonable citing *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So. 2d 589, 628 (Fla. Dist. Ct. App. 1984). We believe the rule adopted in *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987) should apply and hold that the plaintiff has the burden of proof on the issue of the reasonableness of the settlement. In *Morris*, the court held that a stipulated judgment with a covenant not to execute is not binding on the insurer unless the insured can show that the settlement was reasonable and prudent. *Morris*, 741 P.2d at 253–54. Other jurisdictions have also placed this burden of proof on the insured. *See Isaacson v. California Ins. Guar. Ass'n*, 44 Cal. 3d 775, 750 P.2d 297, 309, 244 Cal. Rptr. 655 (1988) (where insurer has not denied coverage, the insured has the burden to prove that settlement was reasonable); *accord, Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). These courts have reasoned that an insured may settle for an inflated amount to escape exposure and thus call into question the reasonableness of the settlement. We share

---

[3]The Nodells claim the benefit of this rule on the theory that Maryland's failure to amend the interrogatory answer to reflect the true coverage bound it to make a reasonable settlement within the stated coverage of $2.5 million. The Nodells argue that when Maryland failed to do so, it became liable for amounts beyond the $2.5 million. We do not address whether the trial court erred in limiting damages to $2.5 million because the evidence on damages is insufficient to sustain the verdict.

this concern about consent judgments coupled with a covenant not to execute.

The Nodells argue that the covenant not to execute does not undermine the reasonableness of the settlement and cite *Steinmetz v. Hall–Conway–Jackson, Inc.,* 49 Wn. App. 223, 741 P.2d 1054 (1987), *review denied,* 110 Wn.2d 1006 (1988) and *Kagele v. Aetna Life & Cas. Co.,* 40 Wn. App. 194, 198–99, 698 P.2d 90, *review denied,* 103 Wn.2d 1042 (1985). In *Steinmetz,* an insurance malpractice action, the insured assigned to the injured party his claim against the brokerage firm for failure to secure liability coverage in exchange for a covenant not to sue or execute against the insured. The trial court granted the brokerage firm's summary judgment motion for dismissal because no damages could be proven since the settlement agreement relieved the insured of any obligation to the assignee. The Court of Appeals reversed the summary judgment holding that the fact that no out of pocket payment was made and no personal liability incurred because of the covenant not to execute did not mean, as a matter of law, that the assignor was not damaged. *Steinmetz,* 49 Wn. App. at 228.

In *Kagele,* a homeowner sued a general contractor when a fire destroyed his home. The contractor assigned to the homeowner his claim against the insurer in exchange for a covenant not to sue or execute. The Court of Appeals held that a covenant not to execute between an insured and a builder did not release the insurer from its obligation under the policy coverage. *Kagele,* 40 Wn. App. at 199. Neither case is helpful to our analysis, however, since both hold only that the covenant not to execute does not eliminate the fact of damage and consequently does not by itself absolve the insurer of liability. *See Steinmetz,* 49 Wn. App. at 228; *Kagele,* 40 Wn. App. at 198. The question remains as to what constitutes a reasonable settlement.

In the context of the contribution provisions of the tort reform act, RCW 4.22 *et seq.,* the Supreme Court has adopted factors a trial court should consider in determining whether a settlement is reasonable. *Glover v. Tacoma Gen.*

*Hosp.*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983). Pursuant to RCW 4.22.060 a reasonableness hearing is held to determine the effect of an equitable distribution of payment among joint tortfeasors according to their liability. The *Glover* court adopted the following factors:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Glover*, 98 Wn.2d at 717. No one factor controls and the trial court has the discretion to weigh each case individually. *Glover*, 98 Wn.2d at 717.

We believe the factors identified by the Supreme Court in *Glover* would logically apply to a determination that a settlement was reasonable in the context of a failure to settle claim. We see little difference between a determination of reasonableness in the context of the contribution statute and the present claim. In both settings similar concerns exist regarding the impact of a settlement on other parties and the risk of fraud or collusion. Because the *Glover* factors address these concerns and will likely result in a fair resolution, we hold that these factors should be weighed in determining a reasonable settlement in an action for bad faith. A court, using the *Glover* factors, can suitably determine whether a consent judgment is reasonable.

The final issue we confront is whether the Nodells have satisfied their burden of proof to show that the settlement was reasonable. The Nodells argue that the settlement was presumptively reasonable because it was judicially approved. The Nodells initiated the underlying personal injury action as guardians for their son. Before a guardian may compromise the full value of a minor's claim, a judicial hearing is required to approve a settlement as reasonable. SPR 98.08W. The Nodells assert that the trial court in that hearing considered the same factors used to determine whether a settlement is reasonable for purposes of RCW

4.22.060. *See Glover*, 98 Wn.2d at 717. The respondents counter that no specific evidence of the reasonableness hearing was presented at trial in this case and, even if there was a prior judicial finding of reasonableness, it would not make the judgment presumptively reasonable because the trial court hearing the guardianship matter did not consider all of the *Glover* factors. We agree.

█ The respondents correctly assert that evidence of the reasonableness hearing was not presented at trial. The only evidence of the prior reasonableness hearing was presented on a summary judgment motion. Even if the evidence had been before the trial court, the Nodells' reliance on the SPR 98.08W hearing is misplaced. The fact that the court approved the settlement does not necessarily prove it was reasonable for purposes of the issue in this case. The court did not consider each of the *Glover* factors, but rather, concluded that the $7.5 million settlement was reasonable because Chaussee's negligence proximately caused Scott Nodell's injuries and his damages would likely exceed $7.5 million. This determination did not take into consideration the risk and cost of proceeding to trial and the released person's ability to pay, two factors which may serve to reduce the amount of a settlement. *See Glover*, 98 Wn.2d at 717. Although the settlement was judicially approved for purposes of a guardian's settlement on behalf of a minor, we do not believe this determination alone was sufficient.

In the alternative, the Nodells argue that they provided sufficient evidence of the reasonableness of the settlement because evidence at trial showed that liability was reasonably likely in the underlying action and the settlement was within the range of a probable damage award. A written evaluation prepared by Mr. Wohlford and Mr. McClure of Reed McClure for Maryland on the liability and potential exposure to Chaussee was admitted at trial as exhibit 44. In this evaluation, Mr. Wohlford and Mr. McClure stated: "All of this taken together, in our judgment, creates the likelihood of a verdict against the insured in the amount of 80%

or 90%." The analysis concluded that there was little likelihood of a significant reduction for contributory negligence and that the minimum verdict range would be $2 million to $2.5 million, with the possibility of it reaching $7.5 million or higher. At trial, Mr. McClure testified that general damages would have added considerably to that figure. However, nowhere in the evaluation document did Mr. McClure or Mr. Wohlford state what a reasonable settlement would be, although they did recommend the insurer make a substantial offer in negotiations at or near the policy limits of $500,000 to settle the case. While this document does provide an assessment of the potential liability of Chaussee, it does not assess the risks or costs of going to trial that a reasonable person would consider in determining a reasonable settlement, nor does the exhibit include any indication of an assessment of Chaussee's ability to pay. Standing alone, it fails to sufficiently prove the damages that resulted from the respondents' negligence.

The Nodells point to another exhibit, the settlement package prepared by the Nodells' attorney for Mr. Wohlford (exhibit 93). It contains extensive information detailing that the construction site was the source of the ice, current and projected medical expenses, and a description of Scott Nodell's medical condition and anticipated course of treatment. We do not believe this exhibit satisfies the Nodells' burden of proof on the reasonableness of the settlement for two reasons. First, while the exhibit provides some indication of the projected damages and the Nodells' liability theory, it does not address most of the *Glover* factors including the risks and expenses of continued litigation, or the released person's ability to pay. It simply is insufficient to show what a reasonable settlement would be in this case.

Secondly, the exhibit was admitted for limited purposes. The trial court stated:

> The Court will allow this in evidence for certain purposes, not others. It is allowed to be received in evidence only to prove that this happened, that it was received by the witness's office and that it was sent by plaintiffs' counsel; in other words,

it is not offered to prove that the various statements within it are actual facts. With that limitation, it will be received in evidence.

We find the second exhibit is insufficient to sustain the verdict. *See Steil,* 448 So. 2d at 592.[4]

Although our review of a judgment n.o.v. requires us to view the evidence in the light most favorable to the Nodells, we cannot approve a verdict founded on mere theory or speculation. *Campbell v. ITE Imperial Corp.,* 107 Wn.2d 807, 817–18, 733 P.2d 969 (1987). The Nodells were required to prove that the settlement was reasonable. The judicial hearing on the guardianship that did not consider all of the *Glover* factors was insufficient. Taken together, the exhibits presented at trial presented sufficient evidence of liability, the merits of the defense theory, and the relative faults of the parties, but failed to show the risks and expense of litigation or Chaussee's ability to pay and therefore were insufficient to prove that the settlement was reasonable.

Accordingly, we affirm the trial court.

SWANSON, J. Pro Tem., concurs.

WINSOR, J.* (dissenting)—I dissent. My disagreement is with the majority's rejection of the alternative argument by Nodells that they provided sufficient evidence of the reasonableness of the settlement. Majority, at 513–14.

I focus primarily upon exhibit 44, the written evaluation prepared for Maryland by two experienced and able

---

[4]The Nodells' attorney in the underlying case testified that Chaussee rejected the Nodells' initial request for a consent judgment of $10 million. Although this evidence shows some negotiations took place before the consent judgment was entered, it does not prove that the $7.5 million amount was reasonable.

While the respondents argue that contrary evidence in the record indicates that the Nodells previously stated they would have settled for an amount less than the consent judgment, this evidence was not admitted at trial and cannot be considered.

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

defense lawyers, Mr. Wohlford and Mr. McClure. That evaluation by itself constitutes ample evidence that the $7,500,000 settlement was within the range of a probable damage award; it states that the chances were 80 to 90 percent for a plaintiff's verdict, and that the chances of the jury's finding any contributory negligence were very unlikely. It also states that:

> [W]e see a $2,000,000 to $2,500,000 verdict as being the <u>minimum</u>. Based upon recent cases involving quadriplegics, it cannot be ruled out that the verdict in this case would go to $7,500,000 or more. Plaintiff is going to be able to project special damages as high as that.

Wohlford explained that he and McClure underlined "<u>minimum</u>" because "we thought that that was a probably overly optimistic view. We were saying that that would be considered the low end of what you could expect and we wanted them to understand that."

Other testimony also establishes the reasonableness of the settlement. Both McClure and Wohlford testified that Scott Nodell was as seriously injured as anyone they had ever seen. Lawyer Frank Draper regarded McClure's "potential damages exposure" as having been "substantially understated." Maryland claims representative Hansen stated in a memorandum that exposure in the case could be $10 million to $30 million. That estimate may well have been realistic, considering that McClure's own estimate of $7,500,000 was for special damages only, and ignored the claims of Scott's parents. In short, there was ample evidence to permit the jury to conclude that $7,500,000 was a reasonable settlement for Mr. Chaussee.

I would reverse the judgment notwithstanding the verdict, but rule that defendant Reed McClure is entitled to dismissal as there was insufficient evidence to establish the standard of practice for a law firm in this situation.

After modification, further reconsideration denied June 27, 1991.