[No. 35322-9-II.   Division Two.   November 6, 2007.]

WILLIAM MARTIN ET AL., *Respondents*, v. LAURENCE M. JOHNSON, *as Personal Representative, Respondent*, METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, *Appellant*.

*Nancy T. McKinley, Aaron P. Gilligan, Catherine E. Christensen,* and *Richard S. Fallon* (of *Fallon & McKinley, PLLC*), for appellant.

*James T. Derrig* (of *Eklund Rockey Stratton, PS*) and *Sandra J. Rovai,* for respondents.

¶1 ARMSTRONG, J. — William and Karyl Martin sued H.E. Sherry Johnson's Estate for damages resulting from a leaking underground oil tank at a house the Martins bought from Johnson. The Martins and Johnson's Estate agreed to settle the lawsuit. Johnson's homeowners' insurer, Metropolitan Property and Casualty Insurance Company, intervened and now appeals the trial court's ruling that the settlement was reasonable. We affirm.

## FACTS

¶2 In 1996, William and Karyl Martin purchased a house from H.E. Sherry Johnson, now deceased. Johnson had owned the house, which was built in 1910, since the 1950s. In the 1970s, Johnson converted the house from oil to electric heat but did not remove or otherwise properly decommission the underground oil tank. The underground tank began leaking oil before 1994.

¶3 In a real property transfer disclosure statement, Johnson checked the box "don't know" in response to questions about the presence of underground storage tanks. Clerk's Papers (CP) at 103. The Martins' inspector did not discover the tank because its filler inlet was covered by landscaping.

¶4 In 2004, the Martins put the house up for sale. The eventual buyer, while researching the house's history, discovered that there was possibly an oil tank on the property. A contractor found the tank, and the buyer required its removal before purchasing the house. The Martins spent $61,415.63 to remove the tank and to clean the contaminated soil and groundwater surrounding it.

¶5 Johnson sought coverage for the Martins' claims against her from Metropolitan Property and Casualty Insurance Company, which provided Johnson's homeowners insurance during the time she lived at the house. Metropolitan denied coverage for the cost of cleaning up the contamination and any potential damages from exposure to toxic substances; Metropolitan agreed, however, to defend the Estate,[1] reserving its rights to contest coverage.

¶6 The Martins filed this lawsuit against Laurence M. Johnson as the Estate's personal representative, alleging that H.E. Sherry Johnson was liable for the costs of the cleanup under the Model Toxics Control Act, chapter 70.105D RCW, and that she negligently failed to properly decommission the tank or warn the Martins of its existence.

¶7 The Martins and the Estate settled. The Estate agreed to a stipulated judgment of $81,928.63 against it and assigned its claims against Metropolitan to the Martins, in exchange for a promise not to execute the judgment against the Estate (a covenant judgment). The Martins also agreed to waive their claims for general damages and litigation costs. The $81,928.63 represented the Martins' cleanup costs and attorney fees. The settlement was contingent on the trial court approving it as reasonable.

¶8 Shortly after the settlement agreement in this case, Metropolitan filed a declaratory judgment action, seeking a declaration that there is no coverage for the Martins' claims against the Estate.

¶9 The Estate moved for an order finding the settlement reasonable; the Martins joined the motion. Metropolitan intervened and opposed the motion. The trial court ruled that the settlement was reasonable. Metropolitan now appeals.

¶10 The questions are whether the trial court properly held a reasonableness hearing in this action rather than the declaratory judgment action and, if so, whether the evi-

---

[1] Johnson died after discovery of the tank but before the Martins filed their lawsuit. The Martins filed a timely creditor's claim in Johnson's Estate.

dence supports the trial court's finding that the settlement was reasonable.

## ANALYSIS

### I. Reasonableness Hearing

#### A. *Effect of RCW 4.22.060*

¶11 Metropolitan contends that the trial court erred in holding a reasonableness hearing because there were no joint defendants with a right of contribution for joint and several liability and therefore the provision in RCW 4.22.060 for a reasonableness hearing does not apply.[2]

¶12 Metropolitan did not raise this argument below, and generally, we will not review an issue raised for the first time on appeal. RAP 2.5(a); *Better Fin. Solutions, Inc. v. Caicos Corp.*, 117 Wn. App. 899, 912-13, 73 P.3d 424 (2003). Because the trial court did not have the opportunity to rule on this issue, we decline to consider it.[3]

#### B. *Requirement of Bad Faith*

¶13 Metropolitan also contends that the trial court erred in making a reasonableness determination because there were no claims of bad faith against it in this lawsuit and the parties presented no evidence that it acted in bad faith.

---

[2] RCW 4.22.040 creates a right of contribution between two or more persons jointly and severally liable on the same tort claim. RCW 4.22.060 provides that when one defendant enters into a settlement with a claimant, the trial court must hold a hearing on the reasonableness of the amount to be paid, with all parties afforded an opportunity to present evidence, and must determine if the amount to be paid is reasonable.

[3] In any event, the claim lacks merit. Metropolitan does not explain how RCW 4.22.060's requirement of a reasonableness hearing in the tort litigation context precludes use of a reasonableness hearing in other contexts. Moreover, the Supreme Court has approved the use of reasonableness hearings in the covenant judgment context. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 738-39, 49 P.3d 887 (2002) (affirming a trial court's finding that a covenant judgment was reasonable where the trial court held a reasonableness hearing); *see also Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 378-79, 89 P.3d 265 (2004) (holding that personal injury action was appropriate forum for determining reasonableness of settlement, even though insurer disputed reasonableness and despite fact that reasonableness hearing essentially determined damages in separate bad faith action).

¶14 If an insurance company refuses in bad faith to settle a claim, the insured may independently negotiate a settlement; the insurance company is then liable for the settlement to the extent that it is reasonable and paid in good faith. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002) (citing *Evans v. Cont'l Cas. Co.*, 40 Wn.2d 614, 628, 245 P.2d 470 (1952)). Even where the negotiated settlement includes a covenant not to execute against the insured, the insurance company is liable for the settlement amount because an agreement not to execute does not preclude a showing of harm to the insured. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 397, 823 P.2d 499 (1992). An insurance carrier that acts in bad faith " 'is in no position to argue that the steps the insured took to protect himself [or herself] should inure to the insurer's benefit.' " *Besel*, 146 Wn.2d at 737 (alteration in original) (quoting *Greer v. Nw. Nat'l Ins. Co.*, 109 Wn.2d 191, 204, 743 P.2d 1244 (1987)).

¶15 Metropolitan cites no authority that requires an insured to wait for a formal finding of bad faith to negotiate a settlement. In concluding that a covenant not to execute against the insured does not preclude a finding of harm to the insured, the *Butler* court noted that, at a time when insurance coverage is in doubt, it is in an insured's best interest to accept a settlement offer that effectively relieves him or her of personal liability. *Butler*, 118 Wn.2d at 397 (quoting *Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 198, 698 P.2d 90 (1985)). An insurer that is disputing coverage cannot compel an insured to forgo a settlement that is in his or her best interests. *Butler*, 118 Wn.2d at 398 (quoting *Kagele*, 40 Wn. App. at 198).

¶16 Here, Metropolitan had informed the Estate that it was denying coverage for the Martins' claims and was providing a defense under a reservation of rights. Facing potential liability for the cleanup costs and general damages, it was in the Estate's best interest to accept a settlement offer that relieved it of liability; Metropolitan cannot compel the Estate to forgo this opportunity. *Butler*, 118 Wn.2d at 397.

■ ¶17 Moreover, the trial court's decision that the settlement is reasonable does not determine whether Metropolitan provides coverage; the declaratory judgment action will answer that question. If the trial court in that case rules there is no coverage, Metropolitan will not be liable for the settlement amount, reasonable or not. If the trial court in that case rules that Metropolitan does provide coverage, the settlement will be the presumed damages. *Besel*, 146 Wn.2d at 738. That the reasonableness decision here may impact the declaratory judgment action does not preclude a reasonableness hearing in this action. *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 379, 89 P.3d 265 (2004).

¶18 The trial court did not err in holding a hearing on the reasonableness of the settlement between Johnson's Estate and the Martins.

## II. REASONABLENESS OF THE SETTLEMENT

¶19 Metropolitan also contends that the trial court erred in finding the $81,928.63 settlement reasonable because the Estate's liability in the case was not clear, absolute, or indefensible.

■ ¶20 In determining whether a settlement is reasonable in the context of a covenant judgment, Washington courts use the factors from *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339 (1991). These are

"[t]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

*Chaussee*, 60 Wn. App. at 512 (alteration in original) (quoting *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717,

658 P.2d 1230 (1983)); *see also Besel*, 146 Wn.2d at 738 (approving use of these factors to evaluate covenant judgment settlements). No single criterion controls, and all nine are not necessarily relevant in all cases. *Besel*, 146 Wn.2d at 739 n.2.

¶21 We review a trial court's reasonableness decision for an abuse of discretion. *Werlinger v. Warner*, 126 Wn. App. 342, 349, 109 P.3d 22 (citing *Glover*, 98 Wn.2d at 718), *review denied*, 155 Wn.2d 1025 (2005). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Gildon v. Simon Prop. Group, Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

¶22 Here, the trial court did not specifically address the *Chaussee* factors, stating only that no party had provided it with any "information . . . that this settlement proposal is anything but reasonable."[4] Report of Proceedings at 14. The parties did, however, address the *Chaussee* factors in their briefs to the trial court. And the trial court stated that it had reviewed the parties' briefs twice before the reasonableness hearing. Given the parties' extensive briefing on the issue and the trial court's statements that it considered the briefs and found nothing showing that the settlement was unreasonable, we cannot conclude that the trial court failed to weigh the *Chaussee* factors. *See Werlinger*, 126 Wn. App. at 351. Moreover, the record contains enough evidence to support the trial court's conclusion that the settlement was reasonable. *See Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn. App. 383, 407, 161 P.3d 406 (2007).

A. *The Martins' Damages*

¶23 Metropolitan asserts that the Estate conceded full liability and attorney fees without any discovery. The record shows that the Martins incurred $61,415.63 in clean-

---

[4] Metropolitan did not argue at the reasonableness hearing that the settlement did not meet the *Chaussee* factors, but instead focused on its argument that the declaratory judgment action was the proper venue to determine reasonableness. The trial court rejected this argument.

up costs and an unspecified amount of attorney fees in their action against the Estate. And the Martins waived their claims for general damages and litigation expenses. The Martins could likely prove damages of at least $81,928.63 at trial.

B.  *The Merits of the Estate's Defense*

 ¶24 Metropolitan argues that the Martins' claim was "entirely defensible" because the Estate is not liable under the Model Toxics Control Act,[5] the Martins presented no evidence that Johnson negligently abandoned the underground storage tank, and the Martins were contributorily negligent in failing to discover the tank. The Estate and the Martins maintain that Johnson was liable under the act[6] and that, even if the Martins were contributorily negligent, the settlement accounts for this risk because it waived the general damages claims and is contingent on a successful action against Metropolitan. Neither party cites authority directly supporting its interpretation of the act. And issues of negligence are typically for a jury to decide. *See Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005). In a case that turns on a complicated issue of statutory construction and jury questions, a decision to settle for an amount within the range of the evidence is reasonable.

C.  *Johnson's Relative Fault*

 ¶25 Metropolitan appears to argue that a court could not determine Johnson's fault in this matter because she is deceased and the "deadman's statute" applies.[7] But evi-

---

[5] Metropolitan points to language in the statute that exempts a consumer product in consumer use. *See* RCW 70.105D.020(4), .040(1).

[6] The Estate and the Martins reason that because the oil was in an abandoned container, it was no longer in consumer use. Thus, the consumer exemption does not apply.

[7] RCW 5.60.030 provides, in relevant part:

   [I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party

dence that Johnson knew about the tank and failed to properly decommission it when converting to electric heat would be admissible because these were not transactions with the Martins. *See Estate of Lennon v. Lennon*, 108 Wn. App. 167, 174, 29 P.3d 1258 (2001) (deadman's statute bars testimony about acts " 'by and between the parties for the benefit or detriment of one or both of the parties' " (quoting *Bentzen v. Demmons*, 68 Wn. App. 339, 344, 842 P.2d 1015 (1993))). The Martins alleged that Johnson owned the house when the oil tank was abandoned, that she failed to properly decommission the tank, and that she failed to inform them of the tank's existence. Metropolitan has presented no evidence to contradict these allegations.

D. *Risks and Expenses of Continued Litigation and the Estate's Ability To Pay*

¶26 As Metropolitan notes, the record contains no evidence as to the Estate's assets or its ability to pay. Nonetheless, the risks and expenses to the Estate of continued litigation are high, especially given that Metropolitan has denied coverage and instituted an action seeking a declaration of no coverage. Moreover, the Estate cannot close probate until the Martins' claim is resolved, making the burden of continued litigation particularly heavy.

E. *Evidence of Bad Faith, Collusion, or Fraud*

¶27 Metropolitan concedes that there is no evidence of bad faith, collusion, or fraud but wishes to "draw[ ] the Court's attention" to the short period of time between the filing of the Martins' complaint and the settlement. Br. of Appellant at 19. The Martins filed their complaint on December 14, 2005. The parties signed the settlement agreement on May 11, 2006. The express public policy of this state strongly encourages settlement. *See, e.g., City of Seattle v. Blume*, 134 Wn.2d 243, 258, 947 P.2d 223 (1997).

in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.

We cannot infer bad faith, collusion, or fraud merely based on innuendo and speculation alone. *See, e.g., Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462, 457 P.2d 603 (1969) ("[F]raud will not be presumed and must be proven by evidence that is clear, cogent, and convincing.").

## F. *Metropolitan's Interests*

¶28 Metropolitan asserts that the Estate and the Martins' objective was to make it responsible for paying the settlement amount. It reasserts its argument that this lawsuit is an improper forum to determine if the settlement was reasonable. We have already addressed and rejected Metropolitan's improper forum argument. Still, Metropolitan argues before us that it had no opportunity for discovery in this action and, thus, could not evaluate the reasonableness of the settlement. But Metropolitan did not advance this argument before the trial court; nor did it ask for more discovery time before the court made its reasonableness ruling. Because Metropolitan did not raise these issues below, we decline to consider them. RAP 2.5(a); *Better Fin. Solutions*, 117 Wn. App. at 912-13.

¶29 In conclusion, the trial court did not abuse its discretion in finding the proposed settlement reasonable.

### III. ATTORNEY FEES ON APPEAL

¶30 The Martins and the Estate request their attorney fees on appeal. They assert that the trial court entered a judgment for attorney fees below and that the Model Toxics Control Act mandates an award of attorney fees to a party who prevails on a claim for remedial action costs.

¶31 RAP 18.1(a) permits us to award attorney fees and costs on appeal if applicable law grants a party the right to recover attorney fees or expenses. In general, a prevailing party who is entitled to attorney fees below is entitled to attorney fees if it prevails on appeal. *Sharbono*, 139 Wn. App. at 423 (citing *Richter v. Trimberger*, 50 Wn. App. 780, 786, 750 P.2d 1279 (1988)). But the Martins and

the Estate have not shown that they were entitled to attorney fees below or that they have prevailed on a claim under the act before this court. Rather, the trial court approved a settlement agreement that included attorney fees; it did not separately grant attorney fees and costs to the Martins and the Estate.[8] Because the Estate and the Martins have not shown that they were entitled to attorney fees for prevailing in the reasonableness hearing below, we decline to award attorney fees on appeal.

¶32 Affirmed.

HUNT and QUINN-BRINTNALL, JJ., concur.

---

[8] The trial court's final order states: "No costs are assessed against either party." CP at 147.