# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT C. JUSTUS, | No. 47196-5-II |
| Respondent, | (Linked with No. 47913-3-II) |
| CORINNE M. TOBECK, as Personal Representative of the Estate of Joseph "Joey" Emery Tobeck; VERNON A. TOBECK, natural father; and APRIL D. NORMAN, natural mother, | UNPUBLISHED OPINION |
| Plaintiffs, | |
| v. | |
| WILLIAM D. MORGAN and DONNA L. MORGAN, husband and wife, and the marital community comprised thereof, | |
| Defendants, | |
| And | |
| STATE FARM FIRE & CASUALTY CO., an Illinois corporation, | |
| Appellant/Intervenor. | |

BJORGEN, C.J. — State Farm Fire and Casualty Co. appeals the trial court's ruling that a covenant judgment settlement[1] between Robert Justus and William and Donna Morgan was reasonable.

---

[1] A covenant judgment settlement involves (1) a stipulated or consent judgment between the plaintiff and the insured, (2) the plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's claims against the insurer. *Bird v. Best Plumbing Grp.*, *LLC*, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012).

State Farm argues that in making this ruling the trial court abused its discretion in evaluating the factors under *Chaussee*,[2] specifically, (1) by declining to fully determine the merits of Justus' liability theories and the Morgans' statute of limitations defense; (2) by making comments in its oral ruling suggesting that William's actions only supported intentional torts, which would be barred by the applicable statute of limitations; and (3) by finding that State Farm had denied the Morgans indemnity coverage.

We hold that the trial court did not abuse its discretion in approving the settlement, because it made a reasonable determination that Justus may have had a negligence theory that would succeed. We also hold that the trial court's comments regarding William's intentional actions did not undermine its reasonableness determination, because it specifically declined to rule on which of Justus' liability theories would prevail. Further, we decline to review the finding that the Morgans were denied indemnity coverage, because State Farm does not challenge the trial court's analysis of the relevant *Chaussee* factors.

Accordingly, we affirm.

FACTS

On June 9, 2010, Joseph Tobeck[3] and Justus were driving on 358th Street South in Roy and discovered long metal pipes in a ditch on vacant property near the Morgans' residence. Unknown to Tobeck or Justus, William owned the pipes but stored them on the vacant property.

---

[2] *Chaussee v. Maryland Cas. Co*., 60 Wn. App. 504, 512, 803 P.2d 1339 (1991).

[3] Tobeck's estate case and Justus' case in this matter were consolidated in superior court. Tobeck's estate case is not part of this appeal.

As Tobeck and Justus were attempting to load the pipes in the truck, they created enough noise to alert Donna, William's wife. Donna alerted William to the noises, and William grabbed his handgun and went outside. He observed Tobeck, Justus, and his metal pipes in the back of the truck. William shouted, "Hey, you have my pipe" and pointed his handgun at Justus. Clerk's Papers (CP) at 67. William then yelled at Donna to call the police because he thought they were stealing his pipes. Justus explained that they meant no harm, to which William replied, "F*** you." Report of Proceedings (RP) (Aug. 29, 2014) at 23. Justus stated that he would take the pipes out of the truck, but William refused to "reciprocat[e] at all." RP (Aug. 29, 2014) at 24.

Ignoring William, Tobeck indicated to Justus that they should leave. Tobeck and Justus got into the truck, and they drove toward a dead-end cul-de-sac down the road. William fired several gunshots at the moving vehicle, hitting no one. As the vehicle reached the cul-de-sac, Tobeck rounded it driving back toward William. William fired more shots at the moving vehicle, one of which struck Tobeck in the head. Justus felt "like someone had thrown a water balloon at [him]" and observed Tobeck's blood all over him. RP at 26.

Because Tobeck, the driver, was incapacitated, the truck veered in the direction of a nearby tree and crashed. Justus' head struck the dashboard, but he was not knocked out. He observed Tobeck gasping for air and tried helping him, but was unsuccessful. Justus was able to escape the vehicle through a window that had been shot out. William approached Justus, pointing his pistol at him and instructing him to get on his stomach and to put his hands up. Justus told William that he had just shot and killed his best friend, to which he replied, "F***

3

you.  You just saw what I did to your friend.  Don't move."  RP at 28-29.  Ultimately, police

were called, Tobeck died from his injuries, and Justus suffered extensive trauma from the event.

Tobeck's estate and Justus sued the Morgans.  Justus' complaint was filed June 27, 2012,

over two years after the incident, and alleged several causes of action against William due to his

"negligent and reckless acts."  These acts included discharging his firearm at the vehicle causing

the automobile accident, preventing Justus from rendering aid to Tobeck,[4] and wrongfully

detaining Justus.  CP at 21, 24-25.  State Farm, the Morgans' insurer, agreed to provide a defense

for them, but also reserved its rights to challenge insurance coverage for any judgment ultimately

entered against the Morgans.  State Farm separately filed an action for a declaratory judgment

that it was not required to cover William under his insurance policies.  We separately address the

appeal of the trial court's decision in the declaratory judgment action in the linked case, *State

Farm v. Justus,* No. 47913-3-II.

In the matter here before us, Justus' suit for damages against the Morgans, the Morgans

moved for summary judgment on Justus' claims of preventing him from rendering aid to Tobeck

and of wrongful detention.  The trial court granted summary judgment in favor of the Morgans

on the preventing aid claim, but denied it on the wrongful detention claim.

Eventually, Justus and the Morgans entered into a covenant judgment settlement, which

had the following contractual features:  a stipulation by the Morgans to a judgment in favor of

Justus for $1.3 million, a covenant binding Justus to not execute the stipulated judgment against

---

[4] The complaint originally categorized this cause of action as William's failure to render aid to
Tobeck, rather than William preventing Justus from rendering aid to Tobeck.  Based on the later
summary judgment ruling, though, the original claim appears to have transformed into a claim
that William prevented Justus from rendering aid.

4

the Morgans, and the assignment by the Morgans of all their claims against State Farm, including coverage and extra contractual claims,[5] to Justus. Justus moved the trial court for a determination that the settlement was reasonable pursuant to the considerations required by *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339 (1991).

State Farm intervened in the proceedings to oppose the reasonableness of the covenant judgment settlement. State Farm argued that the trial court's earlier summary judgment ruling dismissed Justus' claim that William prevented him from rendering aid to Tobeck and was thus not viable. Further, State Farm argued that Justus' claim of wrongful detention was the equivalent of the intentional torts of false arrest or false imprisonment and was thus barred by the applicable two-year statute of limitations. RCW 4.16.100(1). Thus, in State Farm's view, Justus did not have a successful liability theory from which the court could find the covenant judgment settlement reasonable.

The trial court held a hearing to receive evidence and to consider both parties' arguments regarding the reasonableness of the settlement under *Chaussee*. In this hearing, the trial court was aware of State Farm's pending declaratory judgment action to determine coverage and made the following pertinent observations regarding whether Justus' liability theories would ultimately succeed:

> THE COURT: I'm going to make a global assessment. *I think the rest of it is better left for the declaratory action where these issues about which torts were intentional, which torts were negligent, is obviously going to be the subject of the litigation.*

---

[5] As discussed in our opinion in the linked case, *State Farm v. Justus*, the extra contractual claims were those based on State Farm's purported bad faith in handling the Morgans' insurance claim and for its alleged violations of the Consumer Protection Act, chapter 19.86 RCW, and Insurance Fair Conduct Act, RCW 48.30.010-.015.

5

No. 47196-5 (Linked with
No. 47913-3)

RP (Oct. 16, 2014) at 52-53 (emphasis added).

> [State Farm's Counsel]:    We are just simply saying that on the liability side of this, if damages are awarded, they should be awarded based on recognized causes of actions that aren't time barred and that are properly supported by the facts and not by something that's been made up in an attempt to shoehorn this case.
>
> THE COURT:    *That will be the determination of the declaratory judgment decider and whether there is an [sic] negligence cause of action presented or not.*

*Id.* at 74-75 (emphasis added).

On November 7, 2014, the trial court issued an extensive oral ruling determining that the settlement was reasonable. Pertinent to the current appeal, the trial court examined the *Chaussee* factors regarding the merits of the releasing person's (Justus') liability theory and the merits of the released person's (the Morgans') defense theory. As to the merits of Justus' liability theory, it stated that

> [i]n the context of the reasonableness of the settlement calculus, the Court is not to make findings on the substantive issues before another Court in Intervenor State Farm's Declaratory Judgment action.
>
> *In particular, this Court will not make findings as to whether or not or the degree to which Defendant [William]'s actions on June 9th, 2010, were intentional versus negligent.*

RP (Nov. 7, 2014) at 7 (emphasis added). After this prefatory statement, the trial court made the following observations regarding William's actions during the incident:

> [I]t's clear to the Court that William Morgan is wholly responsible for the death of Joseph Tobeck and the damages sustained by Mr. Justus. [William] left the safety of his home with a firearm for which he had no concealed weapons permit.
>
> When he confronted Mr. Tobeck and Mr. Justus, the overwhelming weight of the testimony in this proceeding is that Mr. Tobeck and Mr. Justus, when confronted by an angry and aggressive, armed [William], apologized profusely for any intrusion [William] felt and offered to restore the conduit pipe, which was not even located on [William]'s property, to its original location.

6

. . . .

Instead of then retreating back to the safety of his home, he started firing his weapon at the two young men in the pickup as the pickup slowly, at a walking pace, drove away from the scene in an attempt to remove themselves from the deadly encounter.

[William] waited, again not retreating out of the street to the safety of his home until the police returned, when he killed Joseph Tobeck. Then, in callous disregard for the sanctity of human life, he kept Mr. Justus on the ground at gunpoint and prevented Mr. Justus from attending Mr. Tobeck's mortal wounds.

. . . .

Suffice it to say that William Morgan's conduct on June the 9th, 2010, was outrageous. It is beyond the bounds of human decency. Not only is the releasing parties' theory of liability sound, the facts are inflammatory.

A trier of fact, despite the Court's instructions not to make decisions based on emotion, is likely to view both Plaintiffs' claims for damages quite favorably. This Court is not going to be persuaded by inflammatory facts. But the releasing person's liability theory, the Tobeck and the Justus theory, is sound.

CP at 786-88. The trial court then examined the merits of William's defense theories:

Next we come to . . . the released person's defense theory. [William] raises defenses that his detention of both Justus and Tobeck and his homicide of Mr. Tobeck was somehow justified. [William] poses the legal theory that he was making a civil arrest for a crime being committed in his presence.

To support such a claim, the Court keeps in mind that, at best, Justus and Tobeck were committing misdemeanor theft. Justus and Tobeck could persuasively claim, under these facts, that they were simply taking abandoned property. Irrespective of this, a citizen's arrest for a misdemeanor can only be justified if the misdemeanor offense is coupled with a breach of the peace.

There is no evidence that there was any breach of the peace by Justus and Tobeck. The peace was only breached when [William] arrived in the street with his loaded handgun.

The second proffered defense from [William] was that of self-defense. [William]'s conduct was that of the aggressor, vitiating any possibility he can claim self-defense. In short, [William] has no plausible defense.

7

CP at 788-89.

The court also examined the relative fault of the parties and determined that William would be solely at fault for the incident. In addition, it reflected on whether Justus' claims might be time barred:

> Finally, Intervenor State Farm alleges that the claims are time barred because this action was filed two years and 18 days following the occurrence referenced in Plaintiffs' complaint. This is true for intentional torts. However, negligence-based causes of action have a three-year statute of limitations and are not time barred here. The Court finds, in terms of relative fault, that Plaintiffs were not comparatively negligent in causing their injury, nor time barred for any negligence-based claim *that is later found* to have arisen out of the events of June the 9th, 2010.

CP at 791-92 (emphasis added).

The trial court also extensively analyzed the other *Chaussee* factors, ruling that the risks of continued litigation would be unfavorable to the Morgans, that the Morgans would be unable to pay even a modest judgment against them, that no bad faith or collusion occurred between the settling parties, that Justus had conducted thorough investigation and preparation for the case, and that Justus showed extensive damages as a result of William's actions. Further, it ruled that State Farm, the party not being released, had a legitimate stake in the settlement, but "[t]hat interest is contingent, being based on a coverage and or bad faith action that is not before this Court." CP at 795. The court continued:

> As earlier mentioned, whether any of the claims made by either Plaintiff against Defendant Morgans invoke coverage on the State Farm policy is to be determined in another proceeding. The function of the adjudication pending in this court is limited to an assessment of the reasonableness of the settlement proposed between each Plaintiff and Defendants.

CP at 795.

8

Based on its complete analysis of all the *Chaussee* factors and after reducing Justus' total settlement amount to $818,900, the trial court deemed the covenant judgment settlement reasonable.

State Farm appeals.

## ANALYSIS

### I. COVENANT JUDGMENT SETTLEMENT

1.  Standard of Review/Legal Principles

We review a trial court's determination that a covenant judgment settlement was reasonable for abuse of discretion. *Water's Edge Homeowners Ass'n v. Water's Edge Assocs.*, 152 Wn. App. 572, 584-85, 216 P.3d 1110 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or untenable reasons. *Id.* at 584.

In making its determination whether a covenant judgment settlement is reasonable, the trial court has discretion to examine, as relevant to the case, the nine factors outlined in *Chaussee*:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

60 Wn. App. at 512 (quotation marks omitted) (quoting *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983)). No one *Chaussee* factor controls and "the trial court has the discretion to weigh each case individually." *Chaussee*, 60 Wn. App. at 512.

9

No. 47196-5 (Linked with
No. 47913-3)

2.      Reasonableness of Settlement

State Farm argues that the trial court abused its discretion by concluding that Justus may have causes of action grounded in negligence and that he was not precluded by the statute of limitations from bringing his claims. State Farm's contention only touches on two of the *Chaussee* factors: the merits of the releasing person's liability theory and merits of the released person's defense theory. It does not contend that any other part of the trial court's consideration of the *Chaussee* factors, which all weighed in Justus' favor, was improper or otherwise an abuse of discretion. With this context in mind, we hold that the trial court's limited assessment of Justus' liability theories does not transform its overall reasonableness ruling into an abuse of discretion.

The trial court's role at a settlement hearing is not to exhaustively analyze any one *Chaussee* factor in determining whether a settlement is reasonable; rather, it is to weigh each relevant factor as necessary to the case before it. *Chaussee*, 60 Wn. App. at 512. This includes the trial court's duty to reasonably assess the releasing person's liability theory and the released person's defense theory, but does not require it to conclusively determine whether a claim would ultimately succeed at trial. The following decisions support the proposition that the trial court need only make a reasonable, but not conclusive, assessment of the parties' liability and defense theories.

In *Martin v. Johnson*, 141 Wn. App. 611, 616, 621, 170 P.3d 1198 (2007), the trial court approved a covenant judgment settlement as reasonable in which one of the plaintiff's liability theories against the insured was based on the Model Toxics Control Act (Act), chapter 70.105D RCW. On appeal, the insurer argued that the trial court abused its discretion, in part, because the

10

insured would not be liable under the Act. *Martin*, 141 Wn. App. at 621. In rejecting the

insurer's argument, the *Martin* court noted that the liability claim turned on a "complicated issue

of statutory construction," implying that it was unnecessary to decide whether the insured would

have actually been liable under the Act. *Id.* Thus, the *Martin* court held that the trial court's

"decision to settle for an amount within the range of . . . evidence is reasonable." *Id.*

Similarly, in *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 762-63, 774, 287 P.3d

551 (2012), the trial court approved a covenant judgment settlement as reasonable, based, in part,

on applying RCW 4.24.630, which allows treble damages for certain trespasses. On appeal, the

insurer argued that the trial court abused its discretion because the treble damages provision

requires a trespasser to have a specific intent to cause harm, not simply an intent to act. *Id.* at

775. In declining the insurer's invitation to examine how the statute was interpreted, our

Supreme Court stated:

> We need not consider Farmers' argument on the merits. It is a long settled rule that we decide only those questions that are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity, particularly when the question . . . involves the construction of a statute. Even if we interpreted the treble damages provision as Farmers wished, it would not change the outcome of this case. *The precise question before us is whether the trial court abused its discretion in determining the covenant judgment was reasonable. The applicability of treble damages was a relevant consideration but the trial court was not required to, and did not, decide on the statute's ultimate construction.* As the trial court acknowledged, it only needed to address the viability of the treble damages claim based on what was known to the parties at the time of settlement.

*Id.* at 775-76 (emphasis added) (alteration in original) (citation omitted) (internal quotation

marks omitted).

*Martin* and *Bird* reinforce the notion that the trial court's role is not to decide the merits

of the plaintiff's claims. Rather, its role is to determine whether the settlement is reasonable

11

after addressing the viability of the plaintiff's liability theory in conjunction with any other relevant *Chaussee* factors.

In the present case, the trial court considered Justus' claims based in negligence, including wrongful detention, discharging a firearm at a vehicle, and preventing Justus from rendering aid to Tobeck. These theories were based in part on William's "negligen[ce]" in assessing the situation; that is, whether he had a lawful right to detain Justus, whom he thought was stealing his property. CP at 41. State Farm argued to the trial court, as it does to us, that Justus' negligence claims either do not exist in Washington, or in the alternative, were the intentional torts of false arrest and false imprisonment in disguise and subsequently barred by the two-year statute of limitations. RCW 4.16.100(1); *Heckart v. City of Yakima*, 42 Wn. App. 38, 38-39, 708 P.2d 407 (1985).

Although the trial court ultimately did not rule on whether Justus' negligence claims were legally viable, it believed they had some plausible merit.[6] Indeed, a brief examination of Washington law does not unequivocally demonstrate that Justus' liability theories were barred as a matter of law. For example, case law supports the conclusion that William could have been liable under a general negligence theory, even without prior judicial recognition of a specific negligent wrongful detention tort. *See Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 866-74, 912 P.2d 1044 (1996), *aff'd*, 134 Wn.2d 468 (1998); RESTATEMENT (SECOND) OF TORTS, §§ 281-283 (1965). Thus, a trial court could reasonably determine that Justus' claims grounded in negligence might succeed.

---

[6] The trial court had also considered some of the merits of Justus' negligence claims at an earlier summary judgment hearing. While granting State Farm's motion as to the claim for prevention of aid, it denied the motion as to the claim for wrongful detention.

The trial court was aware that Justus might not have any successful liability theory. It repeatedly noted that State Farm had filed a declaratory judgment action to determine whether William's acts were covered under his insurance policies, and that the trial court in that action could determine that Justus' claims were legally impermissible or simply not covered by his insurance. This declaratory judgment action, which we review in our linked case, *State Farm v. Justus*, gives State Farm a full bite of its apple as to whether Justus' legal theories have merit.

We review of a trial court's determination of reasonableness for an abuse of discretion. *Water's Edge*, 152 Wn. App. at 584-85. Following *Martin* and *Bird,* we do not engage in an exhaustive de novo review of the trial court's evaluation of each *Chaussee* factor, including the merits of the releasing party's liability theory and the released person's defense. *See also Water's Edge*, 152 Wn. App. at 584-85. The trial court's actions do not constitute an abuse of discretion where, as here, it analyzed all the considerations under *Chaussee*, and its decision is neither manifestly unreasonable nor based on untenable grounds or reasons. The trial court exercised its discretion in determining the possibility of the legal claims, but was not required to ultimately conclude the merits of any legal theory. *Martin*, 141 Wn. App. at 621; *Bird*, 175 Wn.2d at 775-76. Thus, we hold that the trial court did not abuse its discretion in ruling that the settlement was reasonable.

13

No. 47196-5 (Linked with
No. 47913-3)

3.        Trial Court's Characterization of William's Actions

State Farm does not assign any error to the findings of fact, which we treat as verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).[7] However, it argues that the trial court's oral factual descriptions of William's actions only support intentional torts—not negligence.

In support of its argument, State Farm cites the following statements in the trial court's oral ruling: that William was "angry and aggressive," that "[i]nstead of then retreating back to the safety of his home, he started firing his weapon," that "in callous disregard for the sanctity of human life, he kept Mr. Justus on the ground at gunpoint and prevented Mr. Justus from attending Mr. Tobeck's mortal wounds," that his actions were "outrageous" and "inflammatory," and finally that William's "conduct was that of the aggressor, vitiating any possibility he can claim self-defense." RP (Nov. 7, 2014) at 7-9.

The trial court's description of William's acts does impart a sense of intentionality to his conduct. The trial court, though, repeatedly stated that it was not making a determination as to which of his actions were negligent or intentional. The trial court's clear and categorical statements that it was not making a determination as to which actions were negligent or intentional overrides any suggestion to the contrary in its description of William's conduct. *Cf.*

---

[7] In its opening brief, State Farm asserted that "[n]o evidence was submitted to the trial court supporting the conclusion that [William]'s conduct was neglectful or inadvertent." Br. of Appellant at 22. This assertion suggested that State Farm was challenging whether the trial court's findings were supported by substantial evidence. In its reply brief, though, State Farm states, "Appellant does not dispute the facts material to the trial court's reasonableness determination, nor is Appellant claiming any error with respect to the trial court's factual determinations." Reply Br. of Appellant at 2. Thus, we decline to review whether substantial evidence supports the court's factual findings.

14

*Ferris v. Blumhardt*, 48 Wn.2d 395, 400, 293 P.2d 935 (1956) (if a court's findings support its

judgment, inconsistent conclusions can be disregarded). Further, the trial court's

characterization of William's conduct as egregious could have been to rebut State Farm's

defense below that William's actions were justified—a theory it has abandoned on appeal.

For these reasons, the trial court's descriptions of William's conduct do not transform its

decision, which analyzed and evaluated each *Chausee* factor in great detail, into an abuse of

discretion. Accordingly, this argument fails.

4.      Finding of Indemnity

In its opening brief, State Farm argues that the trial court erred in its factual

determination that State Farm left the Morgans to "'sift for themselves through the perilous sands

of personal liability'" by denying them indemnity coverage, which, in part, led to the court's

conclusion that there was no fraud, collusion or bad faith between the settling parties. Br. of

Appellant at 22-23 (quoting CP at 794).

After Justus defended the trial court's determination that no fraud, collusion or bad faith

occurred in his response brief, State Farm asserted in its reply brief that it is not "challenging the

trial court's conclusion that the settlement between Respondent and the Morgans was not

animated by bad faith, collusion or fraud." Reply Br. of Appellant at 4.

However, the determination State Farm challenges, that it left the Morgans to sift through

the sands of liability by denying them coverage, was only relied on by the trial court to support

its conclusion that no bad faith, fraud or collusion occurred. Thus, if State Farm is ultimately not

challenging the trial court's conclusion that the agreement was not adopted with bad faith, fraud,

or collusion, as noted in its reply brief, it is not necessary for us to examine whether the trial

15

No. 47196-5 (Linked with
No. 47913-3)

court erred in making the challenged determination. Accordingly, we decline to examine this claim further.

CONCLUSION

We hold that the trial court did not abuse its discretion in approving the covenant judgment settlement under *Chaussee* and that its oral description of William's acts did not undermine its decision. We decline to examine the court's determination related to indemnity coverage because State Farm does not challenge the *Chaussee* factor regarding bad faith, fraud or collusion between the settling parties. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

JOHANSON, J.

MELNICK, J.

16