IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION; ELLIOTT COMPANY, d/b/a ELLIOTT TURBOMACHINERY COMPANY; FRASER'S BOILER SERVICE, INC.; GENERAL ELECTRIC COMPANY; GOULDS PUMPS (IPG), INC.; HONEYWELL INTERNATIONAL INC., successor-in-interest to ALLIED SIGNAL, INC., successor-in-interest to BENDIX CORPORATION; IMO INDUSTRIES, INC., individually and as successor-in-interest to DE LAV AL TURBINE, INC., and ADEL WIGGENS; INGERSOLL-RAND COMPANY; ITT CORPORATION, as successor-in-interest to FOSTER VALVES; MET ALCLAD INSULATION CORPORATION; METROPOLITAN LIFE INSURANCE COMPANY; PM NORTHWEST, INC.; SABERHAGEN HOLDINGS, INC., as successor to TACOMA ASBESTOS COMPANY and THE BROWER COMPANY; SEQUOIA VENTURES, INC., formally known as and as successor in interest to BECHTEL CORPORATION, BECHTEL, INC. BECHTEL MCCONE COMPANY, BECHTEL GROUP, INC.; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 79490-6-I (Consolidated with No. 79590-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

No. 79490-6-I/2

SULZER PUMPS (US), INC., formally ）
known as SULZER BINGHAM PUMPS, ）
INC.; ）
UNION CARBIDE CORPORATION; ）
WARREN PUMPS, LLC, individually ）
and as successor in interest to QUIMBY ）
PUMP COMPANY; ）
ZURN INDUSTRIES, LLC, as ）
successor in interest to ERIC CITY ）
IRON WORKS, ）
）
              Appellant, ）
）
      v. ）
）
ROBERT PAUL ULBRICHT and ）
KAREN ULBRICHT, husband and wife; ）
HEIDI L. ULBRICHT, ROBERT S. ）
ULBRICHT, ）
）
            Respondent. ）
_____ ）      FILED: February 10, 2020

HAZELRIGG-HERNANDEZ, J. — Intervenor United States Fidelity & Guarantee (USF&G) appeals a superior court's determination of reasonableness of a $4.5 million covenant judgment in favor of Robert and Karen Ulbricht and their dependent adult children (collectively, Ulbrichts). The covenant judgment was reached by counsel for the Ulbrichts and the sole remaining defendant in the suit, PM Northwest, days before trial was to commence and as PM Northwest was still left with uncertainty as to their insurers' position on defending them. The insurers for PM Northwest, USF&G and National Union Fire Insurance Company, intervened in the proceedings on reasonableness with the agreement of the parties. USF&G avers the court improperly considered previous asbestos verdict information and assigns error to a number of the findings of fact. We affirm the superior court's determination of reasonableness.

- 2 -

FACTS

In January 2018, Robert Ulbricht and his wife, Karen,[1] filed suit against 20 defendants, including PM Northwest, seeking damages for bodily injury from exposure to asbestos. The record indicates that Robert came into contact with asbestos through activities involving various contractors between 1973 and 1999 when he worked at the Texaco Oil Refinery (the plant) in Anacortes, Washington. In April 2018, the Ulbrichts amended their complaint a second time to include their two dependent adult children as plaintiffs. Due to Robert's mesothelioma diagnosis, the case was given an expedited trial date of August 6, 2018.

PM Northwest was a maintenance contractor at the plant; it did not manufacture asbestos or bring asbestos insulation onto the site. The duration of PM Northwest's work at the plant was disputed. PM Northwest asserted several defenses to the Ulbrichts' claims, including one based on the statute of repose which was denied on summary judgment. Prior to the summary judgment motion, the trial court struck 17 of PM Northwest's affirmative defenses, including employer negligence and superseding cause.

Attorneys for both the Ulbrichts and PM Northwest were deposed in preparation for the reasonableness hearing. Counsel for PM Northwest has defended asbestos cases since 2001. He estimated that 80 percent of all his cases ended in defense "victor[ies]." PM Northwest's counsel also recognized PM Northwest as a "major player" in the case. The attorney identified three key defenses for his client: 1) a lack of causal link, 2) comparative negligence on

---

[1] Because all of the plaintiffs share the same last name, we use their first names for clarity. We intend no disrespect.

Robert's part, and 3) assertion of error as to trial court's decision on the statute of repose. Counsel acknowledged that the chance of prevailing on the first two defenses was "not very good." The defense also recognized the difficulty that PM Northwest had with credibility challenges if the case proceeded to trial, given the expected testimony of four former PM Northwest employees discrediting the company president's denial of working with insulation at the plant. Counsel knew that a "formidable witness" who was an expert in asbestos was expected to testify for the plaintiffs. Perhaps most critically, he was also aware of the likelihood that his client would have to declare bankruptcy if an adverse verdict was entered.

Counsel for the Ulbricht family has represented plaintiffs in asbestos litigation since 1994, taking approximately 20 cases to verdict. The attorney's firm handles approximately 30 asbestos cases a year. The attorneys for PM Northwest and the Ulbrichts tried numerous asbestos cases against each other over the years. The Ulbrichts' attorney was aware of the mounting obstacles that PM Northwest was facing as trial approached.

In March 2018, PM Northwest notified one of its insurers, United States Fidelity & Guaranty Company (USF&G) of the Ulbrichts' claim. USF&G refused to defend or indemnify under the policy and would take no further action until PM Northwest located and produced a copy of the applicable policies. On July 10, 2018, PM Northwest obtained the policy information, but not the formal policy documents, and contacted Travelers and AIG Insurance seeking to open claims under these policy numbers. Shortly after, PM Northwest provided the insurers with the demand letter from Plaintiffs. Defense counsel tendered the claim to

Travelers and AIG, through a risk management company, during the mediation on July 18, 2018, but the insurers still refused to take any action. At that time, PM Northwest advised the insurers that trial was set to begin on August 6, 2018. The Ulbrichts sent PM Northwest a $3.5 million settlement demand, which PM Northwest's counsel described as "ridiculous" and "too high" for a settlement. No counter offer was made.

During the mediation on July 18, 2018, the assigned mediator, a retired judge experienced in asbestos litigation, suggested to defense counsel that PM Northwest consider a covenant judgment given that they had yet to receive authority to extend an offer since no insurance company had agreed to defend or indemnify. Between this July 18th mediation and an August 1st meeting of counsel, much had worsened as to PM Northwest's prospects at trial. PM Northwest's president testified in a deposition that they never worked with asbestos, in direct contrast to the testimony of former employees. PM Northwest's industrial hygiene expert witness testified that she agreed PM Northwest's conduct at the plant violated safety regulations, and the Ulbrichts had brought a spoliation motion. Both sides were actively preparing for trial. The Ulbrichts' attorney expected a verdict above $6 million based on recent asbestos verdicts in Washington and Oregon. After offset of the aggregate settlements already obtained, a verdict would likely result in a judgment of $4.5 to $5.5 million against PM Northwest. Defense counsel similarly estimated the likely outcome of a trial and advised PM Northwest that a potential adverse verdict could range from $1 to $6 million.

Counsel for both sides decided to meet two days before trial to explore settlement possibilities one last time. At the meeting, defense counsel revealed that the insurers had thus far declined to provide defense or indemnity. Both parties' attorneys then began to explore resolution through covenant judgment. Plaintiffs' counsel identified the risk of such a resolution for his clients due to "trading one litigation for the other." Given the recent developments since the last mediation and the contingent nature of such a resolution, Plaintiffs' counsel increased the demand by $1 million from their previous settlement offer to a total of $4.5 million. Defense counsel did not see another alternative to protect his client and also considered the recent verdicts in Washington State. Defense counsel felt $4.5 million was "within the range of possible verdicts" and advised his clients to agree to the covenant judgment in that amount, with an assignment of all rights to pursue a coverage action against its insurers.

Following entry of the resolution, both parties stipulated to intervention by PM Northwest's insurers to challenge the reasonableness of the amount of the covenant judgment.[2] A reasonableness hearing occurred on November 29, 2018 with video testimony by Robert and live testimony from Karen. The parties provided both written and oral argument. The superior court entered its findings of fact and conclusions of law on December 26, 2018 and determined the covenant judgment was reasonable. USF&G timely appeals the superior court's ruling on the reasonableness of the covenant judgment.

---

[2] The second insurer, National Union Fire Insurance Company, also intervened in the litigation as to reasonableness with USF&G and initially joined in their appeal of that ruling. However, National Union voluntarily dismissed their appeal during the pendency of the matter before this court.

## ANALYSIS

I.    Reviewing a Reasonableness Determination

We review a superior court's determination of reasonableness for abuse of discretion. Water's Edge Homeowners Ass'n v. Water's Edge Assocs., 152 Wn. App. 572, 584, 216 P.3d 1110 (2009). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." Boguch v. Landover Corp., 153 Wn. App 595, 619, 224 P.3d 795 (2009).

"When an insurer refuses to settle a claim, the insured may negotiate a settlement on its own and then seek reimbursement from the insurer." Chausee v. Maryland Cas. Co., 60 Wn. App. 504, 509-10, 803 P.2d 1339 (1991). An insurer is only liable for the amount of a settlement that is reasonable and made in good faith. Evans v. Cont'l Cas. Co., 40 Wn.2d 614, 628, 245 P.2d 470 (1952). In Chausee, this court adopted the factors from Glover v. Tacoma General Hospital, to apply to the reasonableness of covenant judgments. Chausee, 60 Wn. App. at 512; Glover, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983). RCW 4.22.060 provides the opportunity for a party to request a reasonableness hearing and places the burden on the party requesting settlement to prove the reasonableness of such. Application of the Chausee factors focuses on weighing them based on the facts of the case at issue.

When a trial court evaluates a covenant judgment for reasonableness the factors applied are:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses

of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

Chausee, 60 Wn. App at 512 (citing Glover, 98 Wn.2d at 717) (alterations in original). Perhaps most critically for our examination, courts have consistently held that "[n]o one factor controls and the trial court has the discretion to weigh each case individually." Id.; See also Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 739, 49 P.3d 887 (2002).

II. Consideration of Previous Verdicts

USF&G argues that the superior court improperly considered "a purely hypothetical settlement amount based on the range of verdicts," instead of the amounts that had been discussed at the prior mediation and were all rejected. This was not improper. A reasonableness hearing examines the amount of the proposed covenant judgment by applying the Chausee factors, not necessarily the amounts previously discussed. See, e.g., Chausee, 60 Wn. App. at 510; Hidalgo v. Barker, 176 Wn. App. 527, 537, 309 P.3d 687 (2013). In the current case, the parties were in quite different positions when they arrived at the covenant judgment days before trial than they were during the court-ordered mediation session.

In Sharbono v. Universal Underwriters Insurance Co., both the plaintiff and defendant submitted jury verdict research at the reasonableness hearing. 139 Wn. App. 383, 404, 161 P.3d 406 (2007). The defendants argued on appeal that the research submitted by the plaintiff included verdicts that were unrepresentative for

the case. Id. Division Two of this court held that the court properly relied on the research, which included past jury verdicts, when evaluating the reasonableness of the covenant judgment. Id. In the current case, the court's consideration of recent verdicts provided by both counsel for PM Northwest and the Ulbrichts operated as a basic framework from which to evaluate reasonableness and was not an abuse of discretion. This situation is analogous to Sharbono, except that instead of critiquing the specific past verdicts that were reviewed at the hearing, USF&G challenges the court's ability to look to previous verdicts at all. This argument by USF&G is unsupported by the case law. The court's consideration of past asbestos verdicts in applying the Chausee factors did not constitute abuse of discretion.

III.    Plaintiffs' Risk and Expense of Pursuing a Bad Faith Claim

USF&G next argues that the court erred by considering the risk of continued litigation for the Ulbrichts in the overall reasonableness determination. Washington courts recognize that covenant judgments are distinct from settlements. "[T]he amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable." Besel, 146 Wn.2d at 738. A covenant judgment is distinct from a cash settlement, in that it does not release a tortfeasor from liability and is only an agreement to seek recovery from a specific asset. Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 765, 287 P.3d 551 (2012). "The insurer still must be found liable in the bad

faith action and may rebut the presumptive measure by showing the settlement was the product of fraud or collusion." Id.

The trial court did not abuse its discretion by considering the future bad faith litigation that would be necessary to enforce the covenant judgment. It is proper for the trial to contemplate the risks and costs involved when evaluating the reasonableness of the proposed covenant judgment. This is what the Chausee factor "risks of continued litigation" encompasses for a court to consider and weigh. At oral argument, USF&G advanced the notion that this factor does not include possible future suits and only refers to the risk of continuing the current suit; we are not persuaded.

As the Ulbrichts point out, the covenant judgment was within the possible verdicts contemplated by both parties. USF&G focuses on conclusion of law 23, where the superior court recognized "[w]hile covenant judgments and settlements overlap in many ways, they are nevertheless separate and distinct agreements that cannot be referred to interchangeably." The court went on to discuss the risks of continued litigation to PM Northwest in the current suit and the risk that the Ulbrichts "may recover nothing from PM Northwest's insurers" in a future bad faith suit. This sort of reasoning is exactly what the Chausee factor "risks of continued litigation" is designed to capture. The superior court made a total of six conclusions of law under this factor of risks and expenses of continued litigation and considered the reasonableness of the resolution holistically.

Further, if the court could not consider litigation beyond the current suit, as USF&G argues, then courts would be unable to consider outside bankruptcy

proceedings as they did in <u>Werlinger v. Warner</u>. 126 Wn. App. 342, 350-51 109 P.3d 22 (2005). The contemplation of the risks associated with a covenant judgment that were considered by the attorneys for both PM Northwest and the Ulbrichts during their meeting before the start of trial reinforces the conclusion that it was something the court should and did consider in terms of how the final covenant judgment was reached. USF&G argues that PM Northwest's motivation for pursuing this covenant judgment is to escape exposure. This is the very nature of a covenant judgment and likely the most common reason that they are pursued, which is why a court has the authority to review a proposed covenant judgment for reasonableness. The court did not abuse its discretion by considering the risks inherent in future suit against the insurers in the context of a reasonableness determination.

IV.    The Superior Court's Findings and Conclusions

USF&G further argues that a number of the superior court's findings were not supported by substantial evidence. We disagree. A reasonableness hearing necessarily involves factual findings which will not be disturbed as long as substantial evidence supports them. <u>Water's Edge</u>, 152 Wn. App. at 584. Our review is limited to whether substantial evidence supports the findings, and if so, whether the findings support the conclusions of law from the trial court. <u>Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.</u>, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). "Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the declared premise." <u>Id.</u> The burden is on

the challenging party to show that the finding of fact is not supported by the record. Id.

"Washington courts have found a trial court's reasonableness determination to be valid even when the trial court fails to list any of the Chausee factors and instead simply mentions that the parties addressed the factors in their briefs and the trial court considered the briefs." Water's Edge, 152 Wn. at 585. Even more dispositive, "[n]o one factor controls and the trial court has discretion to weigh each case individually." Chausee, 60 Wn. App. at 512. USF&G only assigns error to conclusions under four of the nine Chausee factors. Additionally, the four conclusions identified by USF&G in its assignments of error on appeal are not the only conclusions under those corresponding factors. Even if we disregarded all four conclusions as urged by USF&G, the reasonableness ruling could still be independently affirmed on the basis of any number of the unchallenged findings and conclusions.

In looking to the two findings challenged on appeal, finding 8 has five factual components, each of which is supported by substantial evidence and occurred in the three weeks between the mediation and the attorneys' meeting days prior to trial. First, the record before this court makes it clear that "all remaining defendant's settled." Second, "PM Northwest's CR 30(b)(6) representative reaffirmed testimony from a decade ago that the company had no involvement with asbestos materials in stark contrast to the testimony of Mr. Ulbricht and PM Northwest's own employees." This is supported by the July 24, 2018 deposition of PM Northwest's representative, Richard Huntley Jr. Third, "PM Northwest's sole

expert testified that the company violated OSHA regulations in its handling of asbestos materials, causing Plaintiffs to subpoena the expert in their case in chief." This is anchored in the deposition of the Ulbrichts' counsel regarding the expert's testimony and by the witness list provided in preparation of trial.

Fourth, "[p]laintiffs filed a spoliation motion based on evidence that work records had been destroyed after the company had become aware of its asbestos liabilities." This motion was included in the record. The fifth component is "PM Northwest had repeated communications with representatives of intervenors USF&G and National Union apprising them of the fast approaching trial date, neither insurer agreed to furnish defense of indemnity prior to trial." This also is supported by copies of email communications with the insurers and depositions of counsel which make clear that this was the crux of the reasoning behind PM Northwest's counsel determination that it was necessary to explore a covenant judgment.

Finding 11 addresses the procedural posture and history of the case and is supported, in part, by the simple fact of a covenant judgment coming before the court on a reasonableness hearing. This finding states:

> Based on PM Northwest's perilous litigation posture and, in the absence of indemnity coverage, inability to satisfy a multi-million verdict in this case, the parties discussed resolution through covenant judgment. Plaintiffs' counsel proposed that PM Northwest enter into a $4.5 million stipulated judgment together with a covenant by Plaintiffs not to execute said judgment against Defendant's assets and limit their recovery to any insurance coverage available to PM Northwest to satisfy the judgment. PM Northwest's counsel agreed to discuss the proposed settlement with his client.

In the record there are emails and depositions that support the assertion that the Ulbricht's' counsel proposed that PM Northwest enter into a $4.5 million judgment. PM Northwest's counsel admitted that as trial approached he felt their chances of winning were getting worse, that his client would be unable to satisfy the possible judgment against it, and that this compelled him to discuss the possibility of a covenant judgment. The record supports the portion of finding stating that there was an "absence of indemnity coverage." The fact that PM Northwest's counsel admitted he would discuss the proposal with his clients is supported by the signed agreement itself. Each of the component parts of the two challenged findings are well supported by the record; therefore, substantial evidence exists to support them.

The superior court properly utilized the factors laid out in Chausee and the conclusions of law entered by the court logically flow from the unchallenged facts that were found in the case. The conclusions show the trial court's work in evaluating each of the factors under Chausee. We have upheld trial courts' weighing of the factors even without such a clear record. See Martin v. Johnson, 141 Wn. App. 611, 620, 170 P.3d 1198 (2007). Here, USF&G's assignment of error to conclusions of law found by the court are without merit. Further, as noted above, USF&G does not assign error to even half of the conclusions under the four corresponding Chausee factors. Again, as precedent is clear that no one factor controls, the court's reasonableness determination could be affirmed even if we disregarded those findings and conclusions challenged by USF&G. However, we find that the superior court's findings and conclusions in their entirety were proper

as they were supported by substantial evidence in the record, and the conclusions of law properly followed.

The trial court's determination of reasonableness is affirmed.

WE CONCUR:

Andrus, J.

Leach, J.